STOW, Assignee, v. MILLER *et al.*

1. VOLUNTARY CONVEYANCE. When a father in distributing property to his children executed a deed conveying certain real estate to a minor son, but the deed was not delivered, nor the possession surrendered, and after the expiration of about ten years from the execution of such deed, it was destroyed by the grantor and a new one executed and delivered, conveying the same property to the wife and son, at his request, and without any knowledge on the part of the grantor that the grantee was in debt, *Held*:

1. That the mere execution of the deed without delivery did not pass any title to the son, and that the grantor by retaining the deed and the possession retained absolute control of the property.

2. That it was competent for the grantor to change the grantee and convey the property to the wife of the son, instead of to the son himself, and that the property in the hands of the wife, under a conveyance not tainted with any fraud by the grantor or grantee, was not liable for the debts of her husband.

WRIGHT, Ch. J., dissenting to the application of these principles to this case.

*Appeal from Marshall District Court.*

TUESDAY, JUNE 21.

THE proceeding is one in the nature of a creditor's bill. On the hearing the Court found in favor of the defendants, dismissing the action at the costs of the complainant who appeals.

*Henderson & Boardman* for the appellant, cited *Bryan v. Walsh, et al.*, 2 Gilm., 557.

*Brown & Mercer* for the appellees, cited Hilliard Real Estate, 279 ; *McKinny v. Rhoads*, 5 Watts, 543 ; *Hannah v. Swainer*, 8 Id., 9 ; 5 Kent., 499 ; Willard's Eq., 263 ; Story Eq. Jur., §§ 706–793 *a* ; *Hulick v. Scovill*, 4 G. Greene, 159.

LOWE, J.—To understand the chief point of difficulty between the parties in this case, the facts out of which it arose, as brought to light by the pleadings and evidence, should be stated with some particularity.

Some nine or ten years ago Isaac Miller, then residing in Marshall county, concluded to give to his four sons each a piece of land for a home.

This intention was attempted to be effectuated by executing gift deeds to three of the boys, including Levi, the youngest, then about fourteen years of age. The fourth son preferring an equivalent in money, no deed of any land was made to him.

The paper on which these deeds were drawn was of an inferior quality, and it was understood and stated at the time that new deeds of conveyances on that account would be made thereafter.

At the time this was done, Levi was a mere boy, and the deed designed for him was never delivered or recorded, but retained in the exclusive possession of the father for nearly ten years, when it was finally canceled or destroyed by him. It is stated by the father, in his deposition, that Levi, in his opinion, had never even seen the deed referred to.

In October, 1862, some seven or eight years after the foregoing events, Levi intermarried. On the 6th day of April, 1863, he requested his parents, Isaac and Jane Miller, to convey the land which they designed to give him to his wife Alice, which was accordingly done on that day, and the deed delivered for no other consideration than the love and affection which they cherished for their children.

The next day after this, a judgment was rendered against Levi in the District Court for the sum of $393 and costs, in favor of the firm of Shepherd & Darlington, which was assigned to the plaintiff in this suit, who files his petition, charging that Levi was the real owner of the land in

question; that he long had the legal title thereto; that he had paid his father a valuable consideration for the same; that the parents, Levi and his wife, had fraudulently confederated together to hinder and delay the plaintiff in the collection of his judgment, to accomplish which more effectually they, the defendants, had caused the first deed above mentioned to be delivered up to the grantors, in order that the same might be destroyed, and a new deed made to Alice L., the wife of Levi, which had been delivered and duly recorded; and the plaintiff asks, in view of these facts, that the last named deed shall be declared void; that Isaac and Jane Miller shall be decreed to make another deed for the same land to their son Levi, to the end that the same should be subjected to the payment of his judgment. The defendants, in their answer, substantially deny all these allegations, except the making and delivery of the deed to Alice, the wife of Levi.

The evidence introduced in the main sustains their answer. It proves that there never was an execution of the first deed by a delivery, but that the same ever remained in the possession and under the control of the father, and that he also retained the possession of the land, and paid the taxes thereon; that Levi never exercised any acts of ownership over said land during the existence of said supposed deed; that it never was delivered back, or charged in the bill to the grantors for cancellation; that Isaac and Jane Miller, at the time they made the deed to Alice, had no knowledge or intimation of any suit pending against Levi, or judgment to be rendered against him. There is no evidence whatever of their fraudulent confederation with Levi, to hinder and delay the creditors of the latter. The proof shows that the deed to Alice, so far as the grantors were concerned, was made in good faith, without any consideration from Levi and wife other than parental love and affection; that it was made, to be sure, at the request of Levi,

to his wife, who had a purpose in so doing, as shown by the testimony of Noah Travis, a justice of the peace, who in substance said that he was called upon, and requested by Levi to go over to his father's, to draw and take the acknowledgment of the deed in question, and to do so immediately, for the reason "that he had been sued in court, and he wanted his land fixed so that they could not get hold of it."

The above are the material facts disclosed by the pleadings and in the evidence, and are not seriously controverted by the plaintiff; nevertheless, upon two grounds, he insists that he is entitled to the relief for which he prays in the bill, namely, that although the first deed above specified had never been in fact delivered, yet in contemplation of law, there was a delivery sufficient to pass the title to the intended donee.

Secondly, if that was not so, yet that the second deed to Levi's wife was made under circumstances indicating a fraudulent intent, and for that reason should be set aside. Neither of these propositions is believed by a majority of the court to be tenable.

When a father makes a voluntary gift or conveyance in form to a minor child, retaining in his own hands the possession of the instrument, it is entirely competent for him, any time before actual delivery to the child, or some one for the use of the child, to destroy the deed, or make any other disposition of the property. As long as he withholds the deed, the right to control the property is his. This right, however, would be of no avail if the title passed without delivery, a doctrine which is inadmissible and against the settled theory of the law on this subject. 2 Kent, 439; 4 Kent Com., 454; Hilliard on Real Estate and Conveyances, 384.

If a father dies, leaving among his papers a deed of land duly executed in form to one of his children, the law

will give effect to the same if there is anything indicating the intention of the intestate that it should become effective; for example, the conveying to other children an equal portion of his real estate, as was done in this case, a court of equity would be much inclined, in order to effectuate the ends of justice, to declare the deed valid, as was done in the case of *Scrugham* v. *Wood*, 15 Wend., 545, and this is about as far as the courts have gone on this subject. It will be observed that the death of the donor, under the circumstances stated, alters the relative condition and rights of the parties. The intervention of this contingency takes away all power to revoke the deed or to make other dispositions of the property, which existed in life; and the law, in such an event, will or will not imply a delivery and make effective the deed, according to the intent of the grantor, and the surrounding circumstances of the case.

Still, however this may be, the plaintiff insists that the making of the second deed to Alice at the request of Levi, her husband, whose object was to place the property out of the reach of his creditors, is a circumstance calling for equitable interference, and that the same should be set aside as being against the rights of the creditors.

This is a proposition admitting of more doubt than the former. If it involved the rights of creditors as against the donor, instead of the donee, in such cases we would have much to guide us in our conclusions thereon, but, under what circumstances they may assert their claims, against a donee upon property conveyed to another for his benefit, is not so clearly defined.

In general, the obligations of affection are not the subject of legal regulation or judicial control. A man may give his property when and to whom he pleases, subject to the rights of his own creditors, but it will not follow that the donee, in such case, can hold it, exempt from his own debts. Whether property can be given to a man or to

another for him, in such a manner as to permit him to take the benefit of it, and at the same time resist the claims of his creditors upon it, must depend often upon the circumstances of the case.

To illustrate, if a father should make a voluntary conveyance to a stranger, as a naked trust for the exclusive use and benefit of his son, although done in good faith, we know of no reason why the creditor of the son may not subject the property to the payment of his claim. On the other hand, if the father should make a gift deed of property in good faith, and absolute upon its face to his daughter-in-law, intending it for the mutual benefit of the son, as well as the daughter, we see no reason why the donee in such a case could not successfully resist any claims against her husband upon such property. Her husband, to be sure, is permitted to share with her the benefit of the grant; this is incidental and inseparable from their marriage relation; but it is no reason she should lose her rights as a beneficiary under the grant in the absence of fraud, and this is precisely the case at bar. It is not pretended that the evidence in this case shows the slightest fraud or bad faith on the part of Alice, the donee named, or Isaac and Jane Miller, the donors, who are the only parties to the deed. In law, she is capable of holding property in her own name, distinct from her husband, and exempt from his debt, when it comes to her from a quarter outside of the marriage relation, founded upon a consideration of love and affection moving from the donor to herself.

Under such circumstances her rights cannot and ought not to be disturbed by the creditors of her husband.

But it is claimed that Levi, the husband, had a fraudulent purpose in view, in requesting the deed to be made to his wife. Concede it, and what then? Were the rights of the plaintiff prejudiced thereby? Not at all. Not one dollar of Levi's means to pay his debts was lessened thereby.

If the deed had not been made to Alice pursuant to the request, the property would still have been entirely out of the reach of Levi's creditors. Neither he nor they could have filed a bill in equity to compel Isaac and Jane Miller to convey to them. Besides, Levi's corrupt motive in the premises should not have the effect to injure the vested rights of his wife, to whom no fraudulent purpose is imputed or proved. Without elaborating this question further, we will refer to Story's Equity, §§ 706, 707, 793, 793a, and 2 Kent, 437 to 448 inclusive, marginal, where the question is further discussed in its several bearings.

We think, upon the whole, the court below decided rightly, and its judgment is

Affirmed.

WRIGHT, CH. J., *dissenting.*—I admit that the deed first made by the father to the son was never delivered, and hence, that the title did not pass thereby. I admit also, that it was competent for the donor to withhold the purposed and partly executed gift; and that the creditors of the son could not compel its execution. I further admit that such creditors would have no just ground of complaint if the father had changed his mind, and made any other person the recipient of his bounty. It is conceded also, that the father had no fraudulent purpose in making the deed to the daughter-in-law instead of the son. But what I maintain is, that the deed was made to the son's wife, not because the father changed his original purpose, not because he wished or designed to make a gift to the daughter instead of the son, but in execution of his original plan in the distribution of his property, making the change at the request of the son, who intended thereby to enjoy the use of the property, and hold it as against his creditors.

That he was in debt, and had a fraudulent purpose in procuring the cancellation of the old deed and the convey-

ance to his wife, no one can well pretend, after reading the testimony, to deny. In equity, therefore, and in view of the rights of creditors, the wife is but a trustee, holding the title for the benefit of her husband's creditors.

And when the facts are thus settled, she really stands in no better position than any third person, a stranger, thus taking the title at the request and for the benefit of the fraudulent debtor.

What difference does it make, that it was a gift instead of a purchase? If the father had conveyed to the son, would not the property have been his, and liable to this debt? Could he claim that it was a gift, and, therefore, not subject to execution? And why is the rule changed, because the debtor, to accomplish his fraudulent purpose and defeat the claims of his creditors, has the gift executed to himself through a third person, who in equity holds it in trust for such creditors? True, the son did not part with any means which should have been applied to the payment of his debts in obtaining this land. And this would have been equally true if the deed had been made directly to him. And yet if the argument on this subject, used by the majority of the court, is worth anything, it would apply with equal force if he was invested with the legal title. This of course would not be pretended.

I urge no controversy with the proposition that the wife may, in law, hold lands in her own name, distinct from the husband, and exempt from his debts. And she may thus hold, whether she takes title by gift or purchase. And the fact that the husband, as incidental to his relation, may derive some benefit from the property thus in good faith held by the wife, would not give him such an interest as could be reached by creditors. But when the husband is the party beneficially interested, is the actual and real owner, whether he acquire it by gift or purchase, he cannot defeat the claims of his creditors by fraudulently pro-

Stow v. Miller.

curing the title to be made to his wife. It is not, in such a case, the separate property of the wife, but is his. Being his, equity will not stop to inquire into the nature of the consideration leading to the conveyance.

The case before us is not an application by creditors to compel the father to execute a proposed or promised gift to a child. Nor is it one where the donor changed his original purpose, making another the recipient of his bounty. The title has passed from the donor and has come within the reach of creditors. I believe the father made this title to the wife at the request of the son, for him and for his benefit. There was no gift to the wife by the father, because the son was in debt, and the donor desired to secure a home to the family.

I admit that an arrangement of this character, made in good faith, would be upheld. But that the father had no such intention is conclusively clear, when it is remembered that he had no knowledge of the son's indebtedness. The son was fully aware of this fact, however, and hence his haste, immediately preceding the rendition of plaintiff's judgment, in having the title taken in the name of his wife. The wife was not present at the time. She was a mere passive instrument in the hands of the husband. The father had no knowledge that the title was to be made to any one but the son until in the act of signing the deed, and simply yielded to the son's request. And thus, though unconsciously, was he the instrument of his son in his effort to perpetrate a fraud—a fraud against creditors, which should not be upheld.

It only remains to say that I recognize as good law the authorities cited in the majority opinion, but I find nothing in them touching the point upon which we differ.