JOSEPH A. CRABTREE *et al.*

*v.*

JOHN. W. CRABTREE *et al.*

*Filed at Springfield January 17, 1896.*

1. EVIDENCE—*when delivery of deed is presumed.* Delivery of a deed will be presumed from slight circumstances, where there is proof of an intention on the part of the grantor to convey to the grantee.

2. SAME—*presumption that deed of settlement was delivered.* In cases of voluntary settlements the legal presumption in favor of delivery of deeds is greater than in ordinary cases of bargain and sale.

3. DEEDS—*of voluntary settlement—what facts constitute a delivery.* Delivery of a deed made in contemplation of marriage, by a father to his children, which deed he placed in the hands of a third party, saying he wished to see it no more and that it was to be delivered and recorded on his death, is sufficiently shown where it appears the grantor had often expressed his obligations to the grantees and his desire to convey the land to them, and that the grantees were in possession of the land at the time, knew of the deed before his death, accepted it and cultivated the land.

APPEAL from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

In 1886 and prior thereto Barzillar Crabtree owned a farm in Greene county, Illinois, on which he resided. He had issue eight children. Five of these had married and resided away from their ancestor's farm, and several had issue born to them and subsequently died. Certain children of Barzillar, with others, are appellees here, and were complainants in the bill. Three children—the appellants, with their sister Rachel,—remained with their father, and aided in managing and cultivating the farm and keeping house, he having become a widower. On the 21st day of April, 1886, and prior to the death of his first wife, Barzillar made his will, by which he bequeathed 120 acres—a part of his 160-acre farm—to appellants and their sister Rachel. The clause of the will by which this devise was made contained this further declaration: "And in providing for the above and last named two sons and

daughter in what may seem to be in a more liberal manner than is the case of other children first named, is, that the said Frank and Joseph and Rachel have to a very large extent, and will say that they almost wholly have been the means and caused the making of and the paying for the above property, both real and personal, that I have herein willed to them, and as they are to provide and care for their mother as well, for this and other good and sufficient reasons I give them as above, knowing full well that by right it should be theirs."

In March, 1888, Rachel died, unmarried and without issue. The appellants continued to reside on the farm with their father. On the 11th day of December, 1888, the latter executed his warranty deed, conveying absolutely, in fee simple, to the appellants, jointly, the north half of the south-west quarter and the south-east quarter of the south-west quarter of section 5, township 12, range 11, west, in Greene county, Illinois, and which deed was by him on the same day duly acknowledged before E. M. Husted, a notary public. The land conveyed by this deed is the same set forth in the seventh clause of his will made in 1886, although differently described. This deed was, immediately after the execution of the same by him, delivered to the notary, E. M. Husted, for appellants. Husted then and there took the deed and kept it in his possession for appellants until the death of their father, when it was placed on record. At the date of this deed appellants' father owned all of the south-west quarter of section 5, above stated, but by it he conveyed to appellants only 120 acres of the same, thus retaining the south-west quarter of the south-west quarter of said section 5, and of which he died seized. On the afternoon of the same day, after executing and delivering that deed, Barzillar married Margaret Perrine. Appellants have continued ever since in the actual possession of the land in controversy. Their father died on the 30th day of July, 1892, his second wife also dying in March, 1893.

On the 13th day of February, 1893, the bill of complaint in this cause was filed, alleging that Barzillar Crabtree was, on the 21st day of April, 1886, the owner in fee of the south-west quarter of said section 5; that on that day he executed his will; that subsequently to that day his wife died, and that thereafter, on the 11th day of December, 1888, he married Margaret Perrine; that on the 11th day of December, before his second marriage, for the purpose of depriving his second wife of her dower and for the purpose of depriving his lawful heirs of their just and equitable portion of his estate, he being then unmarried, without any consideration, and induced by the fraudulent practices and misrepresentations exercised, used and made to him by the appellants, Joseph A. and A. Franklin Crabtree, he unlawfully executed a warranty deed of conveyance to appellants for the land in controversy in this case. At the hearing of this cause the complainants amended the bill by charging, "that this deed was never in fact delivered to appellants during the lifetime of said Barzillar Crabtree," and that "he was, at the date of said deed, over the age of eighty years." At the same time complainants further amended the bill of complaint, alleging "that Barzillar Crabtree was not of sufficient sound mind and memory to make and execute a valid deed of conveyance to said real estate, and was easily unduly influenced by the said Joseph and Franklin Crabtree, and by reason thereof was induced to execute said deed," etc., and that said deed was not recorded until the 3d day of August, 1892, after the death of said Barzillar; that Margaret Crabtree, his widow, is entitled to dower in the lands conveyed by said deed, and, subject to that dower, all the complainants and the defendants, as the only heirs of the said Barzillar, are entitled to their respective shares in the land conveyed by said deed. The bill prays the said will be declared null and void, the deed to appellants be canceled and forever for naught held, and, subject to the dower of the widow, all of the

lands, including the land conveyed by that deed to appellants, be partitioned, etc., and in case such partition can not be made without manifest prejudice, etc., all of said lands be sold and the proceeds divided among all the heirs of the said Barzillar Crabtree, according to their respective interests, etc.

Appellants answered the bill, denying the charge that their father was not of sound mind and memory when he executed the deed in question; denying the deed in question was executed to deprive Margaret Perrine, his second wife, of her dower, or for the purpose of depriving the heirs of their just portion of that estate; denying all the other charges against them as to the undue influence, etc., alleged to have been practiced by them, etc. The answer also alleges there was a valid delivery of that deed, and denies the charge in the bill of complaint. The infants made the usual answer by their guardian *ad litem.*

Replications having been filed to the answers, the cause was referred to the master in chancery to take proofs of the respective parties, with directions that the master report the evidence to the court. The evidence shows Barzillar Crabtree frequently expressed his purpose and reasons for giving appellants the greater part of his property, and after the execution of the deed left it with the officer who took the acknowledgment, directing him to retain it until the grantor's death and then deliver it to the appellants; that he (the grantor) never wanted to see the deed again. The weight of the evidence shows the grantor, at the time of making his will and subsequently, and at the time of the execution of the deed, was of sound mind and fully comprehended the effect and nature of the act. No evidence of undue influence is shown to cause the execution of the will or deed. Neither does the evidence show the deed was executed for the purpose of depriving his second wife of dower. The will was revoked by the second marriage. The court found the deed was not executed by reason of undue influ-

ence or fraud, and the grantor was possessed of mental capacity, knowing the effect, nature and consequence of his act, but held no delivery was shown. The decree found the will and deed were null and void, and decreed partition, etc. From that decree the grantees in the deed prosecute this appeal, and assign as error the finding that there was no delivery of the deed and decreeing partition.

MARK MEYERSTEIN, for appellants:

In *Bryan* v. *Wash*, 2 Gilm. 557, this court held that "a deed takes effect from its first delivery, without regard to the time it actually comes to the hands of the grantee, or even if it never does."

To constitute the delivery of a deed no particular formality is required, provided it appears that the grantor intends to part with his title, and the control of the instrument passes to the grantee, or to a third person for the grantee. *Bryan* v. *Wash, supra; Gunnell* v. *Cockerill*, 79 Ill. 79; *Hill* v. *Hill*, 119 id. 242; *Roane* v. *Baker*, 120 id. 308; *McElroy* v. *Hiner*, 133 id. 156; *Douglas* v. *West*, 140 id. 455.

Under the undisputed evidence, the grantor could not have legally recalled the deed had he so desired. *Rivard* v. *Walker*, 39 Ill. 413; *Stone* v. *Duvall*, 77 id. 475.

In the case of *Weber* v. *Christen*, 121 Ill. 91, this court held, that if, from all the circumstances, it appear the grantor intended to give effect and operation to the deed and to relinquish all power and control over it, the law would give the deed effect accordingly,—in other words, such acts would, in law, amount to a delivery. *Wiggins* v. *Lusk*, 12 Ill. 132; *Kingsbury* v. *Burnside*, 58 id. 310; *Price* v. *Hudson*, 125 id. 284.

An instrument may be good as a voluntary conveyance or settlement, though it be retained by the grantor in his possession until his death, provided the attending circumstances do not denote an intention contrary to that

appearing upon the face of the deed. *Bryan* v. *Wash*, 2 Gilm. 557; *Masterson* v. *Cheek*, 23 Ill. 72; *Walker* v. *Walker*, 42 id. 311; *Otis* v. *Beckwith*, 49 id. 121; *Reed* v. *Douthit*, 62 id. 348; *Douglas* v. *West*, 140 id. 455.

JAMES R. WARD, and FRANK A. WHITESIDE, for appellees:

If, for any reason, Barzillar Crabtree had desired to change the custody of that deed he had the unlimited power to do so, and his agent, with limited powers, could not lawfully prevent him. In the event this agent had died in the lifetime of Crabtree, it must be conceded no one could have lawfully withheld this deed from the possession of Crabtree. The possession of Husted was the possession of Crabtree. It was therefore never lawfully out of the possession of Crabtree, and never lawfully delivered. In support of this proposition we cite the following cases: *Herbert* v.*Herbert*, Breese, 282; *Wiggins* v. *Lusk*, 12 Ill. 133; *Kingsbury* v. *Burnside*, 58 id. 310; *Provart* v. *Harris*, 150 id. 47; *Bryan* v. *Wash*, 2 Gilm. 565; *Masterson* v. *Cheek*, 23 id. 72; *Stinson* v. *Anderson*, 96 id. 376; *Reed* v. *Douthit*, 62 id. 352; *Walker* v. *Walker*, 42 id. 314; *Stone* v. *Duvall*, 77 id. 477; *Hill* v. *Hill*, 119 id. 243; *Benneson* v. *Aiken*, 102 id. 288; *Cline* v. *Jones*, 111 id. 567; *Weber* v. *Christen*, 121 id. 93; *Price* v. *Hudson*, 125 id. 284; *Bovee* v. *Hinde*, 135 id. 149; *Barrows* v. *Barrows*, 138 id. 653; *Lancaster* v. *Blaney*, 140 id. 209; *Moore* v. *Flynn*, 135 id. 74; *Hayes* v. *Boylan*, 141 id. 405; *Oliver* v. *Oliver*, 149 id. 548.

The instrument could not be regarded as effectual as a testamentary disposition of the property, it not having been attested in accordance with the Statute of Wills. *Byars* v. *Spencer*, 101 Ill. 435; *Bovee* v. *Hinde*, 135 id. 148; *Hayes* v. *Boylan*, 141 id. 407.

It appears that appellants had no knowledge of the existence of the deed until after the death of their father. They therefore, under the authority of *Herbert* v. *Herbert*,

Breese, 354, which has been so often approved by this court, especially in the late case of *Provart* v. *Harris,* 150 Ill. 47, not having accepted the deed, nor, indeed, having any knowledge of it, in the lifetime of their father, their acceptance of it after his death did not render the deed operative and effectual.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The question presented on this record is whether there was a delivery of the deed by the grantor therein. A delivery of a deed will be presumed from slight circumstances, where there is proof of an intention on the part of the grantor to convey to the grantee. (*Brinkerhoff* v. *Lawrence,* 2 Sandf. Ch. 400.) In cases of voluntary settlements the legal presumption in favor of delivery of deeds is greater than in ordinary cases of bargain and sale. (*Bryan* v. *Wash,* 2 Gilm. 557; *Rivard* v. *Walker,* 39 Ill. 413; *Douglas* v. *West,* 140 id. 455; *Haenni* v. *Bleisch,* 146 id. 262.) A deed may be delivered to a third person for the benefit of a grantee, and if accepted by the beneficiary the delivery is as good as though made directly to him, and as effective in conveying title, where no future control of the deed is reserved to the grantor. (*Stinson* v. *Anderson,* 96 Ill. 373.) The mere fact that it is for the benefit of such grantee will in some cases raise the presumption of acceptance. *Rivard* v. *Walker, supra.*

In *Bryan* v. *Wash, supra,* it was held that a delivery is essential to the validity of every deed, and the court said (p. 565): "Anything which clearly manifests the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual, that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery. The very essence of the delivery is the intention of the party." This is

followed by many cases in this State.   We cite *Stinson* v. *Anderson, supra; Winterbottom* v. *Pattison,* 152 Ill. 334; *Gunnell* v. *Cockerill,* 84 id. 319; *Bovee* v. *Hinde,* 135 id. 137; *Cline* v. *Jones,* 111 id. 563; *Oliver* v. *Oliver,* 149 id. 542.

In this record it is shown by the grantor's declaration made in his will—which afterward became invalid by his marriage—that he was under obligations to appellants because of their remaining with him and aiding him to pay for this land, because of which he desired to convey it to them.   This declaration was substantially repeated on different occasions thereafter.   Contemplating a remarriage, and perhaps aware of the fact that such marriage would invalidate the will, he determined to convey the land by deed.   That was the manifest intention. With that object in view he executed and acknowledged the deed and placed it in the hands of a third party, with the declaration that he never wished to see it again, and on his death it was to be delivered and recorded.   The grantees were then in the possession of the land with the grantor, knew before his death of the execution of the deed, accepted it and cultivated the land.   The deed was in the nature of a voluntary settlement in favor of these sons.   Every element necessary to constitute a delivery is shown, and as strongly as it can be shown.   The intention of the grantor is evinced and must prevail.

We hold the evidence sufficiently shows a delivery of the deed, and the decree of the circuit court setting aside that deed and ordering partition of the lands described was error.   The decree is reversed and the cause remanded.                       *Reversed and remanded.*