[Civil No. 932.   Filed March 30, 1906.]

[85 Pac. 483.]

PETER L. HUTTON, as Administrator of the Estate of A. T. Epley, Deceased, Plaintiff and Appellant, v. JOHN CRAMER, Defendant and Appellee.

1. DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.— Intestate offered to convey defendant certain real estate upon defendant agreeing to take care of intestate during the remainder of his life. Thereafter intestate executed a deed and deposited it inclosed in an envelope with defendant's name thereon in defendant's safety deposit box. At the time of the deposit intestate said, "This contains what I am going to give you after I am dead; keep that here until I am dead." The box was not opened until after intestate's death. The bank was instructed by defendant to add intestate's name to that of defendant's on the box and that he be given access to it if he so desired. After this defendant assumed control of intestate's property, did the assessment work and cared for intestate until his death. After intestate's death, the envelope was opened and was found to contain a deed to the mining claim, and a notice that intestate

had conveyed same to defendant and a request that the papers be recorded immediately after intestate's death. *Held,* that the evidence was sufficient to show a valid delivery of the deed to transfer title.

2. SAME—ESCROWS—CONDITIONAL DELIVERY.—If the deposit of a deed in a safety deposit box under instructions to deliver to defendant upon intestate's death be construed as an escrow, and hence conditional delivery, then upon the death of intestate, title to the property vests in defendant.

APPEAL from a judgment of the District Court of the Fifth Judicial District in and for the County of Gila. Eugene A. Tucker, Judge. Affirmed.

The facts are stated in the opinion.

George R. Hill, and G. W. Shute, for Appellant.

With regard to conversations and transactions between appellee and A. T. Epley, the deceased, appellee's testimony (upon which he relied for his proof) is not entitled to a high degree of credit as the other party to the transaction is dead. Rev. Stats. Ariz. 1901, par. 2536; *Page* v. *Burnstine,* 102 U. S. 668, 26 L. Ed. 270; *Stuart* v. *Lord,* 138 Cal. 672, 72 Pac. 143.

There was, without reference to the so-called "notice," no sufficient delivery of the deed at the time. *Porter* v. *Woodhouse,* 59 Conn. 568, 21 Am. St. Rep. 131, 22 Atl. 299, 13 L. R. A. 64; *Prutsman* v. *Baker,* 30 Wis. 644, 11 Am. Rep. 592; *Younge* v. *Guilbeau,* 70 U. S. (3 Wall.) 636, 18 L. Ed. 262; *Cook* v. *Brown,* 34 N. H. 476; *Jackson* v. *Leek,* 12 Wend. 105; *Fay* v. *Richardson,* 7 Pick. 91; *Alsop* v. *Sawthel,* 7 Conn. 503; *Hoboken City Bank* v. *Phelps,* 34 Conn. 103; 2 Kent's Com. 439; Bouvier Law Dic., "Delivery"; *Lawn* v. *Donovan,* 2 Kan. App. 404, 42 Pac. 744; *Stone* v. *French,* 37 Kan. 145, 1 Am. St. Rep. 237, 14 Pac. 530; *Wilson* v. *Wilson,* 158 Ill. 567, 49 Am. St. Rep. 176, 41 N. E. 1007; *Burton* v. *Boyd,* 7 Kan. 17. The cases of *Stout* v. *Stout,* 28 Ind. App. 502, 63 N. E. 250; *Fifer* v. *Rachels,* 27 Ind. App. 654, 62 N. E. 68; and *Hays* v. *Boylan,* 141 Ill. 400, 33 Am. St. Rep. 326, 30 N. E. 1041, are on all fours with the case at bar, and should govern.

The "notice" must control as to the intention of Epley, as to the time of delivery, as it is the authority for the delivery

of the deed. *Bury* v. *Young,* 98 Cal. 446, 35 Am. St. Rep. 186, 33 Pac. 338; *Keyes* v. *Meyers,* 147 Cal. 702, 82 Pac. 304; *Wilson* v. *Wilson,* 158 Ill. 567, 49 Am. St. Rep. 176, 41 N. E. 1007, and cases cited. Appellee cannot claim the deed and repudiate the "notice." The two are inseparable. They were executed at the same time, relate to the same parties and subject-matter, and refer to each other, and must be construed together. 17 Am. & Eng. Ency. of Law, 2d ed., pp. 9, 10. To constitute a delivery, there must be a present intention to divest and convey the property, coupled with a parting of control over the deed. 9 Ency. of Law, 2d ed., 154; *Porter* v. *Woodhouse,* 59 Conn. 568, 21 Am. St. Rep. 131, 22 Atl. 299, 13 L. R. A. 64; *Provart* v. *Harris,* 150 Ill. 40, 36 N. E. 959; *Wilson* v. *Wilson,* 158 Ill. 567, 49 Am. St. Rep. 176, 41 N. E. 1007. Such a deed would be ambulatory and void. Devlin on Deeds, p. 854.

A. C. Baker, for Appellee.

Such deed was valid and conveyed a title *in præsenti* with the use or enjoyment of the premises postponed until the death of the grantor. See, *Owen* v. *Williams,* 114 Ind. 179, 15 N. E. 678; *White* v. *Hopkins,* 80 Ga. 154, 4 S. E. 863; *Graves* v. *Atwood,* 52 Conn. 512, 52 Am. Rep. 610; *Bunch* v. *Nicks,* 50 Ark. 367, 7 S. W. 563; *Wyman* v. *Brown,* 50 Me. 139; *Abbott* v. *Holway,* 72 Me. 298; *Shackleton* v. *Sebree,* 86 Ill. 616; *Webster* v. *Webster,* 33 N. H. 18, 66 Am. Dec. 705; *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244; *Wilson* v. *Carrico,* 140 Ind. 533, 49 Am. St. Rep. 213, 40 N. E. 50; *Prutsman* v. *Baker,* 30 Wis. 650, 11 Am. Rep. 592; *Cook* v. *Brown,* 34 N. H. 460; *Bury* v. *Young,* 98 Cal. 446, 35 Am. St. Rep. 186, 33 Pac. 338. Epley, by his subsequent conduct revoked the clause in the "notice" postponing the use and enjoyment of the premises until after his death, by putting Cramer into the actual possession of the mine, and it is clear that Epley had the power to do this. *Ruiz* v. *Dow,* 113 Cal. 490, 45 Pac. 867; 1 Devlin on Deeds, par. 283, and note. The tendency of the modern and better reasoned cases is to follow the manifest intent of the maker and uphold the conveyance as a deed if not repugnant to some well-defined rule of law. 1 Devlin on Deeds, sec. 855; *Love* v. *Blauw,* 61 Kan. 496, 78 Am. St.

Rep. 334, 48 L. R. A. 257, 59 Pac. 1059. The deed was delivered during the lifetime of the grantor with the intention to pass present title. Whether or not delivery of a deed has taken place is mainly a question of fact. 1 Devlin on Deeds, sec. 262; *Hibbard* v. *Smith,* 67 Cal. 554, 56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46; *Chastek* v. *Souba,* 93 Minn. 418, 101 N. W. 618. No particular form or ceremony is necessary or essential to effect the valid delivery of a deed. The essential feature is that the intention of the grantor that the deed shall at once become operative to pass title to the land conveyed be clearly manifested and that the grantor loses all control over it. The question is one largely of the intent of the grantor as manifested by his acts and declarations, and by the circumstances attending the execution of the deed, and his subsequent conduct toward the same. 9 Am. & Eng. Ency. of Law, p. 154; 1 Devlin on Deeds, sec. 261, 262; *Shults* v. *Shults,* 159 Ill. 654, 50 Am. St. Rep. 188, 43 N. E. 800; *Martin* v. *Flaherty,* 13 Mont. 96, 40 Am. St. Rep. 415, 19 L. R. A. 242, 32 Pac. 287; *Brown* v. *Westerfield,* 47 Neb. 399, 66 N. W. 439, 53 Am. St. Rep. 532, and notes. The mode of fulfilling the intention of the grantor is not so important as his intent. *Hastings* v. *Vaughn,* 5 Cal. 315; *Hubbard* v. *Cox,* 76 Tex. 239, 13 S. W. 170; *Kenniff* v. *Caulfield,* 140 Cal. 34, 73 Pac. 803. The fact that the deed was placed where it was equally accessible to both grantor and grantee, does not make it any the less a good and sufficient delivery. *Kenniff* v. *Caulfield,* 140 Cal. 34, 73 Pac. 803; *Newton* v. *Bealer,* 41 Iowa, 334; *Munro* v. *Bowles,* 187 Ill. 346, 58 N. E. 331, 54 L. R. A. 855; *Sneathern* v. *Sneathern,* 104 Mo. 201, 24 Am. St. Rep. 326, 16 S. W. 497. Appellee had knowledge of the existence of the deed, and it being beneficial to him, his acceptance thereof will be presumed. *Moore* v. *Flynn,* 135 Ill. 74-80, 25 N. E. 844. "If the grantor when executing the deed intends it as a delivery and the parties treat the estate as having actually passed thereby, it will have the effect of a delivery though the instrument be left in the possession of the bargainor." *Bunnell* v. *Bunnell,* 111 Ky. 566, 64 S. W. 420, 65 S. W. 607; Washburn on Real Property, 261; *Cecil* v. *Beaver,* 28 Iowa, 241, 4 Am. Rep. 174; *Tobin* v. *Bass,* 85 Mo. 654, 55 Am. Rep. 392; *Gould* v. *Day,* 94 U. S. 405, 24 L. Ed. 232.

SLOAN, J.—Appellant, Peter L. Hutton, as administrator of the estate of A. T. Epley, deceased, brought suit in the district court of Gila County against John J. Cramer, appellee, to quiet the title to the Gem mining claim situate in the Globe mining district of said county. The case was heard by the court without a jury, and a judgment entered for the appellee quieting the latter's title to said mine in accordance with the prayer of his cross-complaint. From this judgment the appeal is taken.

The facts, as disclosed by the record, are these: In 1903 A. T. Epley was the owner of the Gem mining claim. Being a man of advanced years and somewhat feeble, he proposed to Cramer if the latter would agree to take care of him during his lifetime, to so arrange his affairs that Cramer should have the Gem mine and his other property upon his death. This Cramer agreed to do. In November, 1903, Epley met Cramer in the town of Globe, and said to him: "Mr. Cramer, I have the papers made out, and I would like to go and deposit these papers in your box in the First National Bank." Cramer then accompanied Epley to the bank and introduced him to the cashier, and asked the latter to hand him his private bank box. Upon receiving the box Cramer and Epley withdrew to a private room, whereupon Epley placed in the box an envelope with Cramer's name written thereon, and remarked at the time to Cramer: "This contains what I am going to give you after I am dead; keep that here until I am dead." The box was then closed and returned to the cashier. Before leaving the bank Cramer requested the cashier to put Epley's name on the box with his own name and to give Epley access to it at any time he might desire. The box was not thereafter opened until after Epley's death, which occurred in 1904. After this transaction at the bank Cramer assumed control of the property with the knowledge of Epley, and did or caused to be done the assessment work on the claim. After Epley's death Cramer opened the box at the bank and took out the envelope placed therein by Epley, and found therein a deed made out to him by Epley of the Gem mining claim which he at once placed of record. He also found with the deed, inclosed in the envelope, a paper which read as follows: "Notice. To all whom it may concern: I, A. T. Epley, of the town of Globe, county of Gila,

territory of Arizona, on this 7th day of November, A. D. 1903, have made two deeds of conveyance of all my real estate, of which I am possessed, as also a bill of sale of all my personal property of which I am possessed, to John J. Cramer of Globe, Gila County, territory of Arizona, and have placed the said instruments so made into my private box in First National Bank, Globe, Arizona, to be had and held there by seal for delivery to said John J. Cramer, immediately upon my death, with the understanding that the valuable consideration by said John J. Cramer, so as aforesaid therefor is: (1) That he will cause upon my said death a respectful and honorable burial; (2) that said John J. Cramer has for times past extended every possible kindness to me; (3) that the said John J. Cramer has for many years been and is an oldtime friend; that, for the aforesaid considerations, I have thus conveyed to him, said John J. Cramer, all my real and personal property; and ask that the same be placed on record in the recorder's office, Gila County, territory of Arizona, as evidence of title from myself to him, said John J. Cramer, immediately after decease and this to be the authority therefor.    A. T. EPLEY." The trial court found that there was an actual delivery of the deed by Epley to Cramer during the lifetime of the former, and that the title to the Gem mine thereupon vested in the latter upon the death of the former. The correctness of this finding, as a matter of law, is the sole question raised by the appellant and discussed in the briefs.

It is evident from the facts above stated that Epley intended, by depositing the deed in Cramer's bank box, to part with its possession, and it is likewise evident from his declarations and subsequent conduct that he had no intention of reserving the power of recalling the deed. It is true that the circumstances show that he could have regained possession of the deed had he so chosen. The arrangement made with the cashier of the bank granting Epley permission to have access at any time to the box and the papers therein was made by Cramer, and was not made through any suggestion or request coming from Epley. Nothing in his acts or in his written notice accompanying the deed negatives the view taken by the trial court in its findings that Epley intended irrevocably to place the deed in the

bank box to be there kept until his death. Such an act with such an intent constitutes in law a delivery and a transfer of title under the deed. It is a generally accepted rule of law that where a deed to real estate is handed to a third party to be kept until the death of the grantor, and then immediately to be delivered to the grantee, upon the death of the grantor title vests in the grantee as of the time when the deed was thus placed in escrow; and the law regards the legal effect of such a conditional delivery to be the same, after the death of the grantor, as if there had been an absolute delivery of the deed during the life of the grantor, and an immediate transfer of the title to the grantee, with a reservation of a life estate by the grantor. *Bury* v. *Young,* 98 Cal. 446, 33 Pac. 338, 35 Am. St. Rep. 186; *Cook* v. *Brown,* 34 N. H. 460; *Prutsman* v. *Baker,* 30 Wis. 650, 11 Am. Rep. 592; *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264. Under this rule of law, if the placing of the deed by Epley in the bank box be construed to have been in effect an escrow, and hence a conditional delivery, then, upon the death of Epley, title to the mine vested in Cramer. If the transaction cannot be construed as a conditional delivery, then, under the finding of the court, which the evidence sustains, that Epley parted with the possession of the deed without intending to reserve any right of recall, it must be construed as an absolute delivery, the legal effect of which was to vest title in Cramer subject to the life interest retained by Epley. *Hathaway* v. *Payne,* 34 N. Y. 92; *Foster* v. *Mansfield,* 3 Met. 412, 37 Am. Dec. 154.

Whichever view be taken, therefore, the trial court was right in its conclusion of law that the title to the mine in question vested in appellee, and the judgment must therefore be affirmed.

KENT, C. J., DOAN, J., and CAMPBELL, J., concur.

NAVE, J.—I dissent from this opinion. Whether the instrument in question was delivered, is a matter of Epley's intent. Epley told Cramer that if Cramer would take care of him during his life, Cramer should have the mine *upon Epley's death.* Later Epley said to Cramer, "I have the papers made out, and would like to deposit them in your

box." Upon placing them in the box, Epley said: "This contains what I am going to give you *after I am dead.*" It seems to me immaterial whether "what I am going to give you" refers to the papers or to the mine. In a writing left by Epley with the papers he says: "I have made two deeds . . . for delivery to said John J. Cramer *immediately upon my death.*" The other facts appearing in evidence, very carefully and correctly set forth in the opinion, do not serve to overcome the impression I received from these statements of Epley, that he did not intend an immediate conveyance of the mine; that he did not intend an immediate delivery, conditional or otherwise, of the instrument in question. He seems to have acted upon the assumption which has cruelly defeated many benevolent plans, that he could accomplish a disposition of his property after his death without the interposition of the probate court. In this view, the instrument, being undelivered, cannot take effect as a conveyance.