J. S. MCKEMEY, Executor, Appellee, v. ANNA ECKLES KETCHUM, Appellant.

DEEDS: Delivery—Retention by Grantor—Effect. Delivery will be presumed from the execution and acknowledgment of a deed, together with testimony tending to show intention to pass title, *even though grantor retains full possession of the deed until his death.*

PRINCIPLE APPLIED: When the will of grantor was being prepared, the scrivener inquired of testator, "What about the property on the south side of the square?" Testator answered, "Why, I have already deeded that to Anna Eckles." Testator had a box in a bank. After his death, a deed to Anna Eckles 'for said property was found in the box. The deed was enclosed in an envelope, marked "Anna Eckles' deed to the south side." In this deed, grantor reserved a life estate to himself. This deed was then handed to Anna Eckles, and recorded. *Held* to show delivery by grantor.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

December 19, 1919.

Rehearing Denied April 13, 1920.

J. W. Gilchrist died on February 6, 1915. There was a paper, purporting to be a deed, of date August 1, 1908, in which he reserved a life estate, and made Anna Eckles Ketchum grantee. The trial court holds this deed was not delivered, and therefore canceled it. The grantee appeals.— *Reversed.*

*Richard C. Leggett,* for appellant.

*Starr & Jordan* and *E. F. Simmons,* for appellee.

Salinger, J.—If this deed was not delivered, it must be because there was no manual tradition of the paper. The deed in question bears date August 1, 1908. It names appellant as grantee. It reserves a life estate in the grantor, and was duly acknowledged. When the will of grantor was being prepared, the scrivener inquired of him, "What about the property on the south side of the square,—what are you going to do about that?" Testator answered, "Why, I have already deeded that to Anna Eckles." He had a box in a bank. After his death, the box was opened; the executor, appellee, found said deed therein. It was enclosed in an envelope, on which was endorsed, "Anna Eckles' deed to the south side." The executor handed this deed to Mrs. Ketchum, the grantee in the deed. She looked at it, and inquired whether it should be recorded. Being answered in the affirmative, she returned it to the executor, with instructions to have it recorded. He caused this to be done.

Manual tradition of the deed is not essential. It has never been claimed that a physical delivery of land is necessary. The deed is but a symbol of the transfer of the land. Therefore, it is settled that manual tradition of the deed is not essential. True, such tradition is evidence of

intent to part with title. But it is not the sole evidence. The vital point is whether there is such intent, and it may be found to exist, though some particular means of showing intent is absent. If that were not so, an oral sale of land would always be void; for there would be no deed to hand over. In *Shelton's* case, 1 Croke's Rep. 7 (24–38 Eliz.), the party sealed the deed, had it read, but did not deliver it, nor did the grantee take it; it was merely left behind them in the same place. It was held to be a good grant, on the statement that the parties came there for that purpose, "and performed all that was requisite for the perfecting it, except an actual delivery; but, it being left behind them, and not countermanded, it shall be said a delivery in law."

II. Since, then, manual tradition is, contrary to the rule in the delivery of chattels, not indispensable, it is no argument against the deed that there was a failure to make physical delivery of the paper, though it was in the power of the grantor to surrender the same. The authorities are overwhelmingly opposed to the argument that the keeping of physical control of the paper by the grantor is conclusive against delivery. It has been ruled many times that an effective delivery of a deed is not negatived because it remained in the physical power of grantor to retake the deed. or because he retained mental power to alter his intentions. In *Ray v. Hallenbeck,* 42 Fed. 381, after finding there was an original purpose to execute the deed, and that the paper was later seen in a drawer in the house where both parties to the instrument lived, it is held to be a good delivery, where the paper ultimately reached the grantee, because, while the grantor kept control, he had not changed his original purpose, though he was at liberty to do so.

Where one had the mental power to alter his intention and the physical power to destroy a deed in his possession. and dies without doing either, there is but little reason for

saying that this deed shall be inoperative simply because, during life, he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect, because the intention might have been changed. *Newton v. Bealer,* 41 Iowa 334, at 339; *Lippold v. Lippold,* 112 Iowa 134, 136; *Trask v. Trask,* 90 Iowa 318; *Albrecht v. Albrecht,* 121 Iowa 521, at 524, 525; *Hogan v. Sullivan,* 114 Iowa 456; *Munro v. Bowles,* 187 Ill. 346; *Hutton v. Cramer,* 10 Ariz. 110 (85 Pac. 483) ; *Dettmer v. Behrens,* 106 Iowa 585, 589; *Sneathen v. Sneathen,* 104 Mo. 201 (24 Am. St. 326).

In *Criswell v. Criswell,* 138 Iowa 607, there was not a moment, after the father told the nurse what to do with the paper, when he did not retain the power to demand and obtain its return, and, therefore, not a moment when he did not have the paper under his control. But we held that, despite this, the paper was effectively delivered when, after the death, this custodian found that it named a certain son as grantee, and thereupon handed him the paper. In *White v. Watts,* 118 Iowa 549, at 552, we held that the fact that the grantor had power to recall was not controlling, where he said nothing and did nothing, after he left the paper with another, to be delivered to the grantee after death, and never called for the paper. In *Stevens v. Hatch,* 6 Minn. 64, a new deed was made, to correct a misdescription. The grantor wrote the grantee that the new deed was in the grantor's safe, and that he would rather not record it until he saw grantee, in order that both might see, before recording, whether all was right. Grantee acceding to this, it was held that the new deed was well delivered. How does this differ, in effect, from the keeping of the deed at bar in the box of the grantor? Why does such retention destroy delivery, if keeping the deed in the safe of grantor will not?

III.  As to the effect of keeping control, *Foreman v. Archer,* 130 Iowa 49, at 52, 53, 54, is almost conclusive against the decree below.  In that case, a grantor made a deed, and reclaimed it from a person with whom she had deposited it.  She then placed it in a satchel near her bed, merely instructing a Miss Kinsley that the latter should, if anything happened to grantor, notify relatives, so that they might know where the paper was.  In the case at bar, the deed was kept in grantor's box.  In the *Foreman* case, it was kept in grantor's satchel.  In the case at bar, the grant- ee knew where the deed was.  In the *Foreman* case, those interested were to be advised only after something happened to the grantor.  It is surely true that, in the *Foreman* case, the grantor kept control of the deed by keeping it in her satchel, and that she might, at any time, have destroyed it.  Not only that, but she avowed that she was keeping the paper where it was, so that she might change her mind; she "wanted to retain it, so, if the children went wrong, I could change it if I wished to."  We held there was a good delivery.  We point out that grantor never expressed a wish or desire that her grandchildren should not have the prop- erty, unless that could be implied from her act in having re- gained possession of the deed from the original depositary. · And we say that the fact that grantor desired to retain deed, in case she saw cause to change her mind because the children went wrong, indicated an intention that the con- veyance should be given effect upon her death.

We hold that the decree cannot be sustained merely be- cause grantor kept the deed in his own box, and retained the power to destroy the deed—a power which he did not exercise.   We recur to the point that all required is evi- dence that grantor intended to pass title.

IV.  In determining the intention with which grantor leaves the deed with another, evidence of any declarations or conversations on the subject, at that time or a subsequent

one, is competent. *Dean v. Parker,* 88 Cal. 283 (26 Pac. 91) ; *Corker v. Corker,* 95 Cal. 308 (30 Pac. 541). Delivery will be presumed from very slight circumstances when, by declarations or otherwise, the grantor has uniformly avowed an intention to convey the land to grantee. *Crabtree v. Crabtree,* 159 Ill. 342 (42 N. E. 787) ; *Sneathen v. Sneathen,* 104 Mo. 201 (24 Am. St. Rep. 326, 330) ; *Newton v. Bealer,* 41 Iowa 334, 340; *Walker v. Walker,* 42 Ill. 311, approved 41 Iowa 334, at 340; *Doe v. Knight,* 5 Barn. & Cres. 671, at 672, 686, 687. When one has the burden of showing consideration for a note, a prima-facie supporting consideration is made out by showing that, when deceased delivered the note, he stated that he was doing so in order to protect her in what he was owing her. *In re Estate of Rule,* 178 Iowa 184. It is elementary that subsequent declarations in harmony with the deed are of great weight. It was held, in *In re Geisinger's Estate,* 11 Pa. County Court 168, that a declaration in a will that deeds had been deposited with a third person, to be delivered to grantee after the death of the grantor, is entitled to great weight. Admissions that deed has been made, and is being held for a loan, will establish delivery, though the deed is found with the grantor, since intent is the question. *Chastek v. Souba,* 93 Minn. 418 (101 N. W. 618). Here, when the will was being prepared, the scrivener asked grantor, "What about the property on the south side of the street? What are you going to do about that?" To which it was answered, "I have already deeded that to Anna Eckles." And the deed kept by grantor continued to retain his endorsement that it was deed to appellant's property.

In *Newton v. Bealer,* 41 Iowa 334, at 338, the grantor voluntarily executed a deed to certain lands to a son, reserving the use and occupancy to himself during his lifetime. This deed was kept by the father in a chest with other papers. When, shortly before the grantor's death, one

of his sons suggested the father had better dispose of his property, so there would be no fuss over it when he was gone, he replied that he had fixed that, and, pointing to his chest, said, "After I am gone, the deed will be found in that chest." The last will disposed personal property only. The deed was found in the chest, and handed to the guardian of the grantee. We held that "he thus manifested an unequivocal intention, within a 'very short time of his death, to have this deed operate as a disposition of his property." The *Bealer* case cites with approval from *Stow v. Miller*, 16 Iowa 460, 463:

"If a father dies, leaving among his papers a deed of land, duly executed in form to one of his children, the law will give effect to the same, if there is anything indicating the intention of the intestate that it should become effective."

In *Hutton v. Cramer*, 10 Ariz. 110 (85 Pac. 483), the facts are almost identical, except that the paper was placed in a box owned by the grantee. But this difference is eliminated, because it was arranged that the grantor have access to the box, and because the case finds a good delivery though grantor "might have regained possession" under this arrangement. The grantor said:

"I have the paper made out, and I would like to go and deposit them in your box in the bank."

The papers were placed there in an envelope, with the grantee's name written thereon, and the grantor remarked:

"This contains what I am going to give you after I am dead; keep that here until I am dead."

After the death, a deed to this grantee was found in the box, with a written declaration, stating that deed had been made to him, and giving the reasons. It was held that the grantor had parted with the possession of the deed, without intending to reserve any right to recall. In *Albrecht v. Albrecht*, 121 Iowa 521, 526, 527, we deemed it important

that it was shown that, after grantor had executed his trust, he so expressed himself as to indicate that he had lost all control over the deed, and hold that his declarations after the alleged delivery indicate that he understood he had parted with the title to the land, although enjoyment thereof during life he had reserved to himself.

### 4-a

All agree that the delivery is effective if the deed b° handed to a third person, with direction to hand over the paper, on death of the grantor. It is so ruled in the *Criswell* case and many others. In that case, the paper was handed to a third person, who did not know its contents, with direction to keep it "until the trouble was over." After the death of grantor, the third person found that a son was grantee, and the paper was then given to him; and we held that the title passed. While, in the case at bar, there was no delivery to a third person, surely it affords at least as strong evidence of intention to part with title as a direction that a third person should keep a paper until after grantor died; for, in the case at bar, the grantor had declared that he could do nothing about willing the property, because he had already deeded to Anna Eckles, the deed was found in his possession, endorsed "Anna Eckles' deed to the south side," and thereupon, the executor handed the deed to Mrs. Ketchum, and she took it and recorded it. And there would seem to be, in effect, little difference between this case and *Arrington v. Arrington,* 122 Ala. 510 (26 So. 152), where a father handed a deed to the mother of reputed illegitimate children, and said to her:

"Take these papers, and, if I die before you do, look after them for the children; and if you die before I do, I will look after them."

The mother did not know what the papers were. It was held to be a vesting of the legal title in the children *eo instanti* upon the death. What is the essential difference be-

tween telling a third person to hand a paper, whose contents he does not know, to a named person, after the grantor dies, and stating that certain property had been "deeded" to a named person, declining, for that reason, to dispose of the property by will, and writing upon the paper that it was the deed of a named grantee to described property? Why do not both amount to a declaration of at least an intention to convey, which is the essential thing on the question of the delivery of deeds, although mere intention is ineffective in the gift of a chattel? For, since delivery may be made by words without acts, or acts without words, or both, it is not required, to make a good delivery, where the paper is handed to a third person, that there shall be, in terms, a direction to hand the deed to the grantee. The rule is well stated in the case of *In re Estate of Rule,* 178 Iowa 184:

"If the instrument be handed over to a third person, under circumstances indicating a purpose to part with control over it, a delivery may be found, even though there is no showing of express instructions to pass it on to the payee, donee, or grantee. An instruction or direction to hold for the benefit of such person is all that is necessary."

All that is essential is proof of intention to part with title.

The facts at bar have at least the force of acts from which it is possible to infer a direction that a paper shall be handed over after the death of the director. *Lutes v. Reed,* 138 Pa. 191 (20 Atl. 943); *Miller v. Meers,* 155 Ill. 284 (40 N. E. 577); *Baker v. Hall,* 214 Ill. 364 (73 N. E. 351); *Crain v. Wright,* 114 N. Y. 307 (21 N. E. 401); *Squires v. Summers,* 85 Ind. 252; *Crabtree v. Crabtree,* 159 Ill. 342 (42 N. E. 787); *Scrugham v. Wood,* 15 Wendell (N. Y.) 545, approved 16 Iowa 460, and 41 Iowa 334; *Stevens v. Hatch,* 6 Minn. 64; *Standiford v. Standiford,* 97 Mo. 231; *Phillips v. Houston,* 50 N. C. 302; *Thompson v. Calhoun,*

216 Ill. 161 (74 N. E. 775) ; *Gregory v. Walker,* 38 Ala. 26 ; *O'Kelly v. O'Kelly,* 8 Metc. (Mass.) 436.

In *Anonymous,* 13 Viner's Abr. 23 K. Subd. 12, it was held to be a good delivery where A delivered a deed made to J. S. to J. D., though he did not say it was for the use of J. S. To like effect is *Douglas v. West,* 140 Ill. 455 (31 N. E. 403). In *Doe dem. of Garnons v. Knight,* 5 Barn. & Cres. 671, 672, 686, 687, 691, a witness testified that one Wynne brought to her a brown parcel, and said, "Here, Bess, keep this, it belongs to Mr. Garnons." In a few days, he returned, and asked for the parcel. She gave it to him, and later, he returned a parcel less in bulk than the one he had taken, and said, "Here, put this by." After his death, it turned out to be a mortgage deed to Garnons. It was held to be a good delivery. Now, surely, saying to a third person to keep a parcel, and that it belonged to Mr. Garnons, is not stronger than placing the paper in a box, and saying thereon, "This deed belongs to Anna Eckles Ketchum." This holding was approved in *Jones v. Swayze,* 42 N. J. L. 279. It seems to us that what was said and done by this grantor have at least the effect of such a direction.

V. It may be argued that an admission that one has "deeded" does not necessarily mean that one had parted with title; that delivery, as well as making a deed, is essential. That may be conceded to be true, as an abstraction. But here was more than a statement that there had been a deed made. The relations between the parties were such as to make it natural that grantor desired the property to pass to the grantee. And the fact that a life estate is reserved tends strongly to prove there was an intention to pass present title. *Ball v. Foreman,* 37 Ohio St. 133; *Sneathen v. Sneathen,* 104 Mo. 201 (16 S. W. 497) ; *Williams v. Latham,* 113 Mo. 165 (20 S. W. 99) ; *Thompson v. Calhoun,* 216 Ill. 161 (74 N. E. 775). And the statement of testator

added that the deed took away the right to dispose of the property by will. And this was followed up by endorsing and keeping unchanged the endorsement that the paper was a deed of the property, and was the deed of the grantee. We think all this constitutes a most solemn admission that the deed was delivered; that by it the grantors had parted with the property. It is not impossible that this layman grantor merely described what his hand had done; that he intended to say merely that he had made out a deed, and placed it in his box. As said, so to construe it is not *impossible,* but it is very strained. When an ordinary layman declares he had "deeded," and therefore declines to will, and places the deed in his own safety box, with an endorsement that it belonged to the named grantee, it is strained to hold that, when he says, "I have deeded this property already," he meant merely that he had written out a paper, placed it in a box, but had no intention to convey. Grant that a trained lawyer might, in so remarking, have intended to point out the distinction between a paper merely signed, and not delivered, and one fully executed, as the strictest rules of the law might require, and still we are of opinion that this layman did not intend such definition—meant to say that he intended to part with the title, and that he had, in fact, done so. In the light of all the evidence, we can construe his statement to mean nothing else than that his will was not concerned with this piece of property, because he had parted with it to Mrs. Ketchum, and no longer owned it. It was, in effect, an admission that he had done all, including delivery, that would make his deed effective.

For the reasons stated, the decree of the district court must be—*Reversed.*

Weaver, Evans, Gaynor, Preston, and Stevens, JJ., concur.

Ladd, C. J., concurs in holding that the evidence exact-

ed a finding that the deed was delivered, but is of opinion that nothing in the record warrants any inference as to how this might have happened, and that none of the cited cases are analogous.