## RAY *v.* HALLENBECK *et al.*

### (*Circuit Court, E. D. New York.* April Term, 1890 )

1. MORTGAGES—CONSIDERATION—RELATIONSHIP.
   The relationship existing between father and daughter is sufficient to uphold a mortgage given by her to him as security for her deceased husband's debts, though they could not have been enforced as against her.

2. SAME—DELIVERY.
   On foreclosure proceedings, testimony by the daughter that she handed the mortgage to her mother, who occupied rooms in her house with the father, and that she afterwards saw it in a bureau drawer in their room, shows that she intended the mortgage for the father; and, as it reached and was accepted by him, the transaction constitutes a delivery to the father.

3. SAME—PRIORITIES—RECORDING.
   The mortgage, though unrecorded when the daughter made a voluntary conveyance of the premises to her second husband, who had, however, theretofore discharged an attachment against them, is entitled to priority over the conveyance, but subject to the amount paid on the attachment.

In Equity. On bill to foreclose.
*W. M. Safford*, for complainant.
*Joseph A. Burr*, for defendants.

WHEELER, J. This suit is brought to foreclose a mortgage of $4,825 made by the defendant Annette M. Hallenbeck, daughter of the orator and wife of the other defendant, November 16, 1882, and recorded June 17, 1887, on a house and lot in Brooklyn conveyed to the other defendant April 23, 1883, by deeds recorded May 5, 1883. The defendants deny consideration for, and delivery of, the mortgage, and validity of it against the prior recorded conveyances. A former husband of Annette M. Hallenbeck owned the premises, and conveyed them to her. He owed the orator $3,000 or $4,000 in notes, and another debt of about $1,200, and died leaving little personal estate. She was administratrix. The orator insists that she promised to pay his debt if he would not pursue the estate; that she has paid many small sums upon it; and that this mortgage was given for the balance, and he supposed recorded at the time, and soon after was delivered to him. The premises were attached in a suit upon her notes given for the other debt. She insists that the small sums were filial gifts for the comfort of her parents, and that the mortgage was suggested by the attachment as a security for their support, and was given for that purpose only. Letters from her, sent with money, show it was paid under what she deemed to be an obligation, rather than sent as a free gift. The orator's testimony, with these letters, and the fact of the making of the mortgage, overcome the answers, and make out satisfactorily that the debt of the former husband, and her situation in respect to it, were the consideration of the mortgage, which the attachment of the premises prompted at that time.

The counsel for the defendant argues that the mortgage would be mere security for a debt; that she would be under no obligation to pay the debts of her former husband; and that her promise to pay it, or note or bond given for them, would be without consideration and void, leaving

the mortgage without anything to be enforced for. This would be true in respect to the debts alone; but assets in her hands as administratrix, liable to be reached for the debts, might afford a good consideration for a promise to pay them as an original undertaking by her. *Templeton* v. *Bascom*, 33 Vt. 132. The personal assets were, however, too slight to afford any substantial consideration for an obligation for such a large debt; and whether the mortgaged premises could have been reached is not clear. The mortgage debt must be considered as without a sufficient consideration to support an action at law upon it. This does not show, however, that the mortgage is not good. A mortgagee has an estate in the mortgaged premises distinct from the right to enforce the debt otherwise. 2 Washb. Real Prop. bk. 1, c. 16, § 4; Trowbridge on Mortgages, 8 Mass. Rep. Supp. 554. This is shown by the fact that letting the debt become barred by a statute of limitations, or satisfying or suspending it by imprisonment of the debtor, has no effect upon the right to proceed upon the mortgage. *Burnell* v. *Martin*, 2 Doug. 417; *Davis* v. *Battine*, 2 Russ. & M. 76; *Tappan* v. *Evans*, 11 N. H. 311; *Richmond* v. *Aiken*, 25 Vt. 324. The consideration need only be sufficient to uphold the mortgage as a conveyance of this estate in order to make it valid between the parties to it, and others having no greater rights. This mortgage is made by indenture of bargain and sale containing the word "grant," and others of conveyance. The relation of blood between father and daughter would be a sufficient consideration for such a deed absolute of the mortgaged premises. 2 Bl. Comm. 296; 4 Kent, Comm. 464; 3 Washb. Real Prop. bk. 3, c. 5, § 3. This is elementary. No more would be necessary to uphold the conveyance upon condition than one absolute. The estate conveyed is the same. One may be defeated, the other not. This estate could be defeated by the payment of the "sum of money mentioned in the condition," not by defeating liability on the debt. As argued, the mortgage was security for the debt, and nothing more; but the debt was the one described in the mortgage, as described, and not what could be enforced at law otherwise. The consideration would uphold a conveyance of so much of the estate as she chose to and could convey. She chose to and did convey so much of it, as far as she could, as would be necessary to secure the debt set forth, if the mortgage was delivered.

The question of delivery does not seem difficult. She does not testify that she changed her mind after she had the mortgage made, intending it for her father's security and intended, after that, to keep it from him, but does testify that she gave it to her mother. In another part of her testimony, she states that all conversation about sending money was with her mother. Her father and mother occupied the same rooms in her house, and she says that she afterwards saw the mortgage in the bureau drawer in their room. If she actually gave the mortgage to her mother instead of to her father, these circumstances show that she intended it for him; and, as it reached and was accepted by him, the effect was the same.

The attachment was in force as a lien on the premises at the time of the orator's mortgage. The defendant John J. Hallenbeck paid it off,

at the sum of $1,470.55, at the time of the conveyance to him. He paid nothing further at the time. The evidence shows expenditures by him for his wife, the other defendant, before marriage and since, but does not show any bargain by which he took the premises in payment of these debts, nor any other negotiation by which he became a purchaser of them. As to everything except the paying off of the attachment, the conveyance to him appears to have been purely voluntary. He was not in reality a purchaser. Such a conveyance would not postpone the interest covered by the prior unrecorded mortgage to itself. 4 Kent, Comm. 171. But, as the mortgage would not convey the interest covered by the attachment, he would seem to have acquired a right, to that extent, prior to the mortgage, by paying that off, and taking the conveyance. Except to this extent, he appears to hold the title conveyed to him for his wife, the other defendant, and to have no greater rights against the orator's mortgage than she has.

The orator, upon these considerations, seems entitled to a decree of foreclosure, except as to the amount of that lien. That may be lessened by the rents of the premises received by the defendant John J. Hallenbeck over and above the expenditures about them since his deed; and the amount due on the mortgage appears to have been lessened by some payments. An account of the sum due on each seems to be necessary. Let a decree be entered for an account of the amount due the orator on his mortgage, and of the amount due the defendant John J. Hallenbeck on the amount paid by him on account of the attachment lien, and for a foreclosure of the mortgage subject to a priority in his favor for the amount due him, with costs.