N. T. Guernsey, Trustee, v. The Black Diamond Coal & Mining Company, The Capital City State Bank, A. Holland, President, C. H. Dilworth, Appellants, *et al.*

**Judgments: PRIORITY:** *Deed held for delivery.* A deed executed by a debtor to give a preference to a creditor, takes precedence over a judgment obtained by another creditor while the deed was in the actual possession of the debtor without having been recorded, where the debtor, before the recovery of the judgment, stated to the grantee that he had the deed, and advised the latter to put it on record, and afterwards, with the assent of the grantee, promised to put it upon record, thus evidencing the understanding of both parties that the deed was to take effect as security immediately, and that delivery was intended.

**SAME.** But this is not so, and the judgment is superior, where the deeds are held by the debtor, to be delivered to personal creditors in case firm creditors begin action, then to be delivered in order to give preference to the personal creditors, said intent being acquiesced in by failure to demand delivery.

**Corporations: POWERS OF PRESIDENTS.** The president of a bank may, in the exercise of his inherent powers to take charge of the litigation of the bank, assign a judgment in favor of the bank to a trustee for the purpose of collection, and to the end that the latter may maintain an action thereon in connection with a judgment against the same debtor assigned to him by another creditor.

*Appeal from Polk District Court.*—Hon. W. A. Spur rier, Judge.

Thursday, October 22, 1896.

Plaintiff, as assignee in trust of two judgments against the defendant coal and mining company, Isaac Brandt, and J. C. Macy, brings this action in equity to set aside certain conveyances of real estate made by the defendant Brandt to a number of persons severally, including the defendants, A. Holland, C. H. Dilworth,

Note.—As to the powers of the president and vice-president of a corporation, see extensive note to *Waite v. Nashua Armory Association* (N. H.) (14 L. R. A. 356).

and George G. Wright, Sr., and to declare said judgments senior and superior liens on said real estate. Issues were joined, as will hereafter sufficiently appear, and upon hearing decree was entered in favor of the plaintiff as against defendants A. Holland and C. H. Dilworth, from which they appeal, and in favor of the defendant, George G. Wright, Sr., from which the plaintiff appeals.

*Guernsey & Bailey* for appellant N. T. Guernsey.

*Read & Read* for appellants Capital City State Bank and A. Holland, president.

*C. C. & C. L. Nourse* for appellant C. H. Dilworth.

*Cummins & Wright* for appellee Geo. G. Wright, Sr.

GIVEN, J.—I. The judgments upon which this action is based, were rendered on the sixth day of November, 1893,—one in favor of the Iowa National Bank of Des Moines, Iowa, and the other in favor of the Marquardt Savings Bank. The plaintiff alleges as to each of said judgments: "That said judgment has been assigned to, and is now owned by, plaintiff, and remains wholly unpaid." These allegations the defendants deny. On the trial, plaintiff introduced in evidence an assignment in writing, in due form, to him, as trustee, of each of these judgments, the assignment of the Marquardt Savings Bank judgment being signed, "G. W. Marquardt, Pres.," and the one in favor of the Iowa National Bank, being signed, "Ed. H. Hunter, Pres't Iowa Nat'l Bank." To these offers the defendants objected "as incompetent, and for the further reason, that it nowhere appears that the officer who made the assignment had any authority to make it." It will be observed, that, by this objection, the defendants do not question the genuineness of the signature

of Mr. Marquardt or of Mr. Hunter, nor that they were presidents of their respective banks, but ground the objection upon the claim that it nowhere appears that, as such officers, they had authority to make these assignments. *Klemme v. McLay*, 68 Iowa, 158 (26 N. W. Rep. 53), is cited. In that case it was questioned whether the persons executing the assignment were officers of the bank, authorized to make the assignment, while in this the objection is not, that they were not presidents of the banks for which they acted, but that it is not shown that, as such, they had authority to make these assignments. There is no showing of authority beyond what may be inferred from the fact that each executed the assignment from his bank, as president thereof. The powers of a president of a bank are such as are inherent in the office, or conferred by usage or resolution of the board of directors. We have no evidence as to usage, nor of resolution conferring this power, and therefore, must inquire whether such a power is inherent in the office. Presidents of banks are usually, if not universally, members of the board of directors, and, in the absence of usage or resolution, their powers are not greatly in excess of that which can be exercised by any other single director. In Morse, Banks, section 143, it is said: "But, ordinarily, the position is one of dignity, and of an indefinite general responsibility, rather than of any accurately known power. The president is usually expected to exercise a more constant, immediate, and personal supervision over the daily affairs of the bank than is required from any other director; indeed, it is a singular fact that the entire collection of judicial authorities justifies the annunciation of only one act as falling within the properly inherent power of the president. This solitary function is to take charge of the litigation of the bank. There is no

question that this matter belongs to him by virtue of his office. He may institute and carry on legal proceedings to collect demands or claims of the bank." It will be observed that these assignments are to the plaintiff in trust, and evidently were so made for the purpose of collection, and to the end that the relief herein asked might be sought in one action. Our conclusion is, that the objections are not well taken, and that the plaintiff has sufficiently established his ownership of the judgments to entitle him to maintain this action. Plaintiff, in his opening argument, anticipates a claim that his judgments are not valid; but, as defendants do not so claim in argument, the matter requires no further notice.

II. The facts upon which this action rests are, in substance, as follows: The defendant, Isaac Brandt, was personally indebted to the defendants, Dilworth, the Polk County Savings Bank, the Capital City State Bank, and to others. He was also liable in large sums to others, including the Marquardt Savings Bank, and the Iowa National Bank, as surety for the Black Diamond Coal & Mining Company. These personal creditors of Mr. Brandt were each urging payment of security. On August 30, 1893, Brandt and his wife executed and acknowledged a warranty deed conveying to the defendant, George G. Wright, Sr., certain real estate in the city of Des Moines, on account of said indebtedness to the Polk County Savings Bank. On the same day Brandt and his wife executed and acknowledged a like deed conveying other real estate in Polk county to the defendant, "A. Holland, Pres.," on account of his indebtedness to the Capital City State Bank. On September 18, 1893, they executed and acknowledged another like deed for other real estate in Polk county to the defendant, C. H. Dilworth, on account of an indebtedness to him. Several like deeds were executed by Brandt and wife

about the same time to other creditors of Mr. Brandt, but, as they were not parties to this appeal, these deeds need not be more particularly mentioned. The deeds in question were each retained by Isaac Brandt in his possession until November 7, 1893, on which day he delivered each of said deeds to the grantee named therein, and on the same day each was filed for record. The judgments under which plaintiff claims relief were rendered in the district court late in the afternoon of November 6, 1893, on original notices and acceptances of service thereof, in substance, as follows: The notices are identical, except as to the plaintiffs. They are in the usual form, and recite that the petition would be filed on or before the thirty-first day of August, 1893, and notify the defendant to appear on or before noon of the second day of the September term, commencing on the eleventh of September, 1893. Due and legal service of said notices was accepted August 31, 1893, the acceptance reciting as follows: "We hereby agree that the said petition may be filed at any time before the end of Sept. term, 1893, of said court, at Des Moines, Iowa, with the same effect as if filed at the time fixed in the within notices; and when so filed, said court may take jurisdiction of said cause, and render judgment therein as if said petition was filed at the date named in said notice." Said acceptance is signed, "Black Diamond Coal & Mining Co., by Isaac Brandt, Pres. Isaac Brandt. J. C. Macy." The record of these judgments shows that they were rendered on default, but it does not appear therefrom when the petitions were filed.

There is no question but that these judgments were rendered prior to the actual delivery of the deeds of conveyance in question. The defendants state their contention as follows: "That a general judgment is a lien only upon the actual interest of the judgment debtor in real property, and is

subject to all existing outstanding equities; that by virtue of the oral agreement made September, 1893, in pursuance of which the deed to Dilworth was executed, the defendant Dilworth had an equity in the property in controversy, which was prior to the liens of all general judgments obtained against Brandt subsequent to the time the said oral agreement was made."

III.   It is not questioned that the plaintiff's judgments only became a lien upon the actual interest of Mr. Brandt in the property. The contention is whether, under the facts, the defendants had acquired any interest in the property prior to the rendition of the judgments.   The defendants (appellants) cite authorities to the effect that a court of equity will enforce parol agreement to give a mortgage, against a subsequent judgment lien, and, relying upon this rule, they contend that they had acquired an equity in the property by virtue of Brandt's oral agreement to give them the property as security.   The evidence as to these agreements, especially that of Mr. Brandt, is quite extended, and therefore will not be set out.   It shows quite satisfactorily that Brandt owned considerable property, and was indebted in considerable sums to his personal creditors as surety for the coal and mining company, of which he was president; that he realized the possibility of his becoming embarrassed because of his inability to turn his property into money, and believed that, if not too closely pressed by his creditors, he would be able to pay all without embarrassment.   It is evident that he desired, in case of emergency, to secure his personal creditors in preference to those of the coal and mining company, to whom he was liable as surety.   These defendants, personal creditors, were asking security because of their claims being long overdue, and possibly because of some knowledge as to the financial condition of Mr. Brandt.   Mr. Brandt was willing and desirous of

securing them in preference to the other creditors, but declined to give mortgages and (except in the case of defendant Wright), to give deeds to be recorded, as to do either, would cause his creditors to refuse further indulgence, and to proceed against him. The deeds in question were executed in pursuance of verbal promises by Brandt to the grantees, that he would do so. It is entirely clear, from the evidence of Mr. Brandt, that he executed these deeds with the intention of holding them, except the one to Wright, in his possession and control, until such time as, in his opinion, threatened action by his other creditors should render their delivery necessary to give preference to the personal creditors named in the deeds. Brandt anticipated, that to give to these personal creditors mortgages, or to place all of these deeds on record, would precipitate his creditors upon him, and defeat his expectation of paying out without such embarrassment. There can be no doubt but that, except as to the deed to Wright, Brandt withheld delivery of the deeds to prevent them from going on record, and with the intention of delivering them whenever it appeared to him necessary to make them effective in favor of the grantees, as against his other creditors. It is true, that in the course of his examination, Brandt says, that it was his intention to secure these defendants, but plainly, their security was to attach, when, in his opinion, an emergency came that rendered delivery of the deeds necessary, to exclude other creditors from the rights in the property conveyed. It was not his intention to pass title by the execution of the deeds, but to have them ready for delivery, if other creditors threatened to proceed against him. According to Mr. Brandt's purpose, these deeds would never have been delivered, if other creditors had not threatened to proceed against him. Undoubtedly, it was the

rendering of these judgments that caused the delivery of the deeds. The defendants (appellants) contend that they are not bound by Mr. Brandt's secret purpose to withhold the delivery, and that, as he intended and agreed to secure them by conveyance of this property, their rights therein attached immediately upon the making of such agreement. In view of the fact that these defendants never exacted a delivery of the deeds, and permitted them to remain in the sole control of Mr. Brandt for so long a time, we think the fair inference is, that they acquiesced in his intention not to deliver the deeds or perfect the security unless an emergency arose which, in his opinion, rendered it necessary to give these creditors the preference. We have no doubt but that, relying upon Mr. Brandt's willingness to give security in case an emergency arose, and, upon discovering it in time, to deliver the deeds before other rights attached, Brandt and the defendants, other than Wright, rested the delivery upon that condition. The parol agreements to give security were, we think, upon the same condition. If the agreements had been unconditional, surely the defendants would have, within the time that elapsed, insisted upon the delivery of the conveyances. We are of the opinion that, though all other contentions were ruled in favor of these defendants, it cannot be said, under the facts, that they acquired any interest in the property prior to the rendition of plaintiff's judgments, either by virtue of the parol agreements or the execution of the deeds.

IV. The facts, in relation to the parol agreement with, and deed to, George G. Wright, differ from those with respect to the other parol agreements and deeds, in this particular: The evidence shows, that at the time Brandt agreed to give a deed, it was expressly understood, that it should be delivered and recorded; that soon thereafter, Brandt

informed Wright that he had executed the deed, but wanted a writing to show that it was a security. Judge Wright testifies, that one day Brandt said he had not the deed with him, but would deliver it to Wright on another day, and that at another time he said: "Here is the deed; you had better put it on record;" and that he (Wright) answered, "All right, I will do so." Judge Wright also states, that Brandt said: "I have the deed, and I will either hand it to you, or put it upon record. It is here, and executed, and is for you." I said, "All right." It appears that the deed was retained by Mr. Brandt, and was not put upon record until after these judgments were rendered, but there can be no doubt, under the evidence, that both parties understood that it was to take effect as security from the time of its execution, and that delivery was intended. Our conclusion is, that the decree of the district court should be affirmed on both appeals.—AFFIRMED.