GUY C. RICHARDSON, Appellant, v. JOHN ESTLE et al., Appellees.

No. 41041.

JUNE 24, 1932.

Nichols, Tipton & Tipton and R. G. Howard and Wilson & Harris, for appellant.

H. C. Madden and J. F. Devitt for appellees.

EVANS, J.—E. M. Rex and Alice Rex are husband and wife. John Estle is the father of Mrs. Rex. In April 1926 one Miller, Receiver of an insolvent National Bank, obtained a judgment in Greene County against the defendants Rex for approximately $8000. The plaintiff became the purported owner of this judgment by assignment from the Receiver in December 1927. In the same month Mrs. Rex conveyed to her father the last remnant of her property and her husband joined therein. This property consisted of an undivided one-sixth interest in a four-hundred twenty-five acre tract of land situated in Muscatine County. Estle was a resident of Dallas Center. The Rexes were residents of Grinnell. They were heavily indebted and were insolvent. It was for this reason that the Receiver assigned the claim which he held against them to a better collector than himself. One of their largest creditors was the father, John Estle, defendant herein. He had signed notes with them, either as surety or guarantor, to an amount in excess of $22,000. Two of these notes had been paid by him. The required payment by him of the other two notes was inevitable. In December 1927 he visited his daughter and her husband at their home at Grinnell and their financial relations were talked over. It was at that time agreed between them that the daughter and her husband would convey to him the Muscatine County real estate and that he would credit them with the value of such real estate upon the indebtedness due him. They went together to the office of Attorney Rayburn at Grinnell for the purpose of making the con-

veyance. When they got there they found that they were unable to give the scrivener a proper description of the property. The matter of conveyance was therefore postponed, with the understanding that when Estle returned to his home at Dallas Center, he would send the correct description to the Rexes and that they should then make the conveyance. It was also understood that the conveyance when made should be sent for record to Muscatine County with directions to the Recorder to forward the recorded deed to John Estle at Dallas Center. After his return home, Estle sent to his daughter the correct description of the real estate, whereupon she and her husband went again to the office of Attorney Rayburn and executed the conveyance pursuant to the agreement. This was on December 31, 1927, and such was the date of the deed. There was a short delay before the deed was sent to Muscatine County. December 31 was Saturday. On January 5, E. M. Rex mailed to the Recorder of Muscatine County the deed in question accompanied with a letter of advice which directed the Recorder to record and to return the recorded deed to John Estle at Dallas Center. The County Recorder noted the filing of the deed as of January 7, at 9:00 A.M. He then returned the deed by mail pursuant to directions to John Estle at Dallas Center.

After the acquisition of his judgment, the plaintiff caused a transcript of the same to be filed in Muscatine County. This was done on January 6, 1928. His attitude is that his judgment-lien attached to the real estate of the defendant Alice Rex before a delivery of her deed to her father had been accomplished. It is the major contention of the appellant that the delivery of the deed to John Estle was not accomplished until he had received it from the Muscatine County Recorder. His alternative contention is that in any event effective delivery of the deed was not accomplished until it was received by the Muscatine County Recorder; that therefore his judgment lien should be deemed prior and superior to the warranty deed. In the absence of evidence to the contrary, the deed was presumed to be delivered on the date of its execution. On the face of the record, therefore, the judgment did not attach as a lien to such realty. The judgment-lien could not attach to any real estate not owned by the judgment-debtor at the time of filing of the transcript. The issue is not strictly one of priority of liens. The plaintiff either has a

priority of lien, or he has no lien at all. The plaintiff served notice of this action on the last day of July 1928. In the meantime, and so far as appears, without any notice of any claim of lien by the plaintiff, Estle paid the consideration for his deed by cancelling and delivering to Alice Rex her three notes for $2000, $3000 and $7000 respectively. These notes had been paid to the holders thereof by Estle as surety thereon. He delivered them all to his daughter in payment for the real estate. It was stipulated at the trial that the value of such real estate was approximately $3200. The defendant Estle was still liable as surety upon another note for $10,000. This real estate had been inherited by Alice Rex from her mother, who had died some five or six years previously. The distributive share of the defendant Estle therein had never been set apart. He had, however, been in the possession of the entire tract and was in possession at the time of the transaction under consideration. It will be seen from the foregoing that the issue is a very narrow one. It was arrived at in the district court somewhat progressively.

The plaintiff's original petition was in two counts. The first count presented the facts chronologically, and apparently predicated the claim for relief upon the priority of the filing of the transcript over the date of the recording of the deed. The second count pleaded that the deed was executed for the purpose of hindering and defrauding the creditors of the grantor. Such were the issues tendered when the case came on for trial.

At the close of the evidence, and after both parties had rested, the plaintiff filed an amendment to his petition wherein he charged that the deed had not been delivered until after the filing of plaintiff's transcript of judgment. This is the single issue that is presented here. The claim of fraud was abandoned. Nor is it claimed that the mere priority of date of filing the transcript over the date of recording the deed is of itself decisive. Under the issue the burden was, and is, upon the plaintiff to prove affirmatively that the deed had not been delivered prior to January 6. The plaintiff formally concedes that delivery of a deed is largely a question of intention and that it may be implied from facts and circumstances clearly evincing an intent to deliver; yet his argument is largely based upon the assumption that somewhere and in some way, some formality must be found at some point of time whereby the delivery becomes com-

plete. In ordinary business transactions involving mutual obligations undertaken by both parties, dispute between them over the question of delivery is virtually non-existent. Where, pursuant to preceding agreement, instruments are executed, their delivery is implied. The execution of a deed of real estate pursuant to a previous agreement therefor simply perfects an equitable ownership already acquired by such preceding agreement. The failure of a formal conveyance or delivery does not necessarily defeat the equitable ownership. The particular field of law wherein the question of delivery often becomes controlling and decisive, is that relating to gifts. Contracts involving mutual obligations are usually executory. But gifts are not executory. A promise to make a gift is not enforceable. A gift to be valid must be complete. Delivery therefore is legally essential to the completed gift. In the development of the law on that subject, formality has been discarded, as not essential to the proof. Theoretically the function of delivery is to bring the donation into the *hands* of the donee. Practically, the courts hold that delivery need not be *manual*. Delivery may be made without the knowledge of the donee. Manual delivery may be made to a third person where such is the intent of the donor. Delivery may also be made without the intervention of a third party and without the surrender of custody where the conduct of the donor is of such unmistakable character as to indicate an intended delivery. Our own cases on this subject are many. We need only refer to one or two of our more recent cases, as illustrative of the state of the law. See McKemey v. Ketchum, 188 Iowa 1081; Gould v. Logan, 198 Iowa 935. The syllabus in the McKemey case is as follows:

"Delivery will be presumed from the execution and acknowledgment of a deed, together with testimony tending to show intention to pass title, even though grantor retains full possession of the deed until his death."

In the Gould case, likewise, the intent of the donor was made very plain, but was never disclosed to the donee during the donor's life. The case before us does not involve a donation. The parties obligated themselves to each other. They agreed upon a contract. The Rexes agreed to execute and *deliver* the deed. Estle agreed to buy the real estate and to pay its value

therefor. The subject matter was definitely agreed on. The fact that the price to be paid was not agreed on, is not vital. A contract for a *quantum meruit* is as valid as any. The indebtedness owing to Estle was many fold greater than the value of the land. He had more than paid the consideration before the deed was executed. As between themselves they estimated the value as between $50 and $60 per acre. Under the stipulation herein the land was actually worth $45 per acre. Estle cancelled and delivered notes to an amount fourfold greater than the real value. On the face of the record, therefore, there could be no debate or doubt as to the intent of the Rexes not only to execute the deed, but to deliver the same also; and likewise no doubt of the intent and understanding of Estle that a delivery was to be made. What would thus be presumptively true is negatived in the argument of plaintiff because Estle directed, or requested, the Rexes to send the deed to Muscatine County for record and to direct the County Recorder to forward the recorded deed to Estle. The argument is that Estle thereby prescribed the *strict* method of delivery, and that therefore no delivery could be presumed until the method or course prescribed by him was fully complied with. By that method of reasoning delivery would not be accomplished until the deed had come into the hands of Estle. That would be literally *manual* delivery. The plaintiff has no need to claim so much, were it not that the logic of his argument leaves him no stopping place short of such manual delivery. But the alternative argument is that Estle selected the Muscatine County Recorder as his agent when he directed him to send the recorded deed to himself. The natural answer to that argument is, if Estle appointed the County Recorder as his agent, he made such appointment through the agency of E. M. Rex. Estle directed Rex to *send the deed*. That direction meant presumably that he should send it by mail. There was no other practical method by which it could be done. That amounted to a selection of the Postal Department as an agency of the defendant Estle. Rex delivered the instrument to the Postal Department. If sending the deed to the County Recorder could constitute a delivery to the grantee, why could not delivery to the Postal Department be made equally effective as a delivery to the grantee? One agency was as competent as the other to terminate the custody and control of the grantor. To sum up

the immediate situation, Mrs. Rex, the owner and grantor, executed the deed and surrendered it so far as she was concerned. She surrendered it to her husband for the very purpose of enabling him to comply with the directions of her father. He complied with those directions and surrendered his custody to the Postal authorities. But the plaintiff argues at this point that the Postal Regulations permit the withdrawal of mail after it is deposited and that the Rexes retained that privilege under the Postal Regulations and that therefore they had not surrendered their custody. In the McKemey case we said:

"The authorities are overwhelmingly opposed to the argument that the keeping of physical control of the paper by the grantor is conclusive against delivery. It has been ruled many times that an effective delivery of a deed is not negatived because it remained in the physical power of grantor to retake the deed, or because he retained mental power to alter his intentions. In Ray v. Hallenbeck, 42 Fed. 381, after finding there was an original purpose to execute the deed, and that the paper was later seen in a drawer in the house where both parties to the instrument lived, it is held to be a good delivery, where the paper ultimately reached the grantee, because while the grantor kept control, he had not changed his original purpose, though he was at liberty to do so. Where one had the mental power to alter his intention and the physical power to destroy a deed in his possession and dies without doing either, there is but little reason for saying that this deed shall be inoperative simply because, during life, he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect, because the intention might have been changed."

The foregoing was said in a case where the donor was under no obligation to deliver; whereas in the case before us the grantor was under obligation to deliver as well as to execute. In Kyle v. Kyle, 175 Iowa 734, we said:

"But, when the grantor deposits the deed with a third person, directing him to deliver it upon the happening of the grantor's death, no authority or control over the instrument being re-

served, the possession of the custodian is for the use of the grantee alone, and, even if the grantor should repent the act and in some way repossess himself of the instrument or destroy it, the grantee's title is not thereby divested.''

In Everett v. Whitney, 55 Iowa 146, the issue of delivery was involved. The plaintiff therein, a resident of Ohio, loaned $800 upon a chattel mortgage to Elijah Everett. The mortgage was made pursuant to an agreement therefor. The precedent agreement was that the debtor-mortgagor was to select the property to be included in the mortgage and was to deliver the mortgage at the Recorder's office for record. The mortgage was given accordingly and delivered at the Recorder's office. On the same day and shortly after the delivery at the Recorder's office the property was seized under a writ of attachment. The trial court instructed the jury as follows:

''If at the time the debt was contracted * * * it was agreed between plaintiff and Elijah Everett that the debt should be secured by a chattel mortgage or bill of sale of personal property, and it was left with Elijah Everett to determine the particular property which should be included in the instrument, and it was agreed between them that Elijah should execute the instrument and have it recorded, and in pursuance of that agreement he did execute it and leave it with the recorder to be recorded; that act was in effect a delivery of the instrument, and it became effective as a mortgage from the date of such delivery.''

On appeal to this court this instruction was approved. We quote from the opinion as follows:

''In this case the evidence tends to show that there was an agreement that the mortgagor should deliver the mortgage to the recorder and pay for the recording. It is also fairly to be inferred that the debtor should select the property to be included in the mortgage, because the creditor's residence was hundreds of miles from the property, and it was not contemplated that he should be present at the execution of the mortgage. We know of no reason why the creditor could not make the debtor his agent to file the mortgage for record, and under the circumstances of this case the delivery to the recorder was as effectual as if delivered to the plaintiff.''

To like effect see Guernsey v. Black Diamond Coal Co., 99 Iowa 471. In Adams v. Ryan, 61 Iowa 733, a question of delivery and agency was involved. The grantor in the deed was Chamberlain. He employed a notary to draw the deed. The grantee was present when the deed was drawn. He directed the notary to send the deed to the County Recorder for record. The notary put the deed in his own safe and forgot to send it for record. We quote from the opinion:

"The evidence shows that Chamberlain procured a notary public to write the deed, and, when it was made, the plaintiff was present and directed the notary to send it to the county recorder for record. The notary put the deed in his safe and forgot to send it for record. It is claimed that the notary was the agent of Chamberlain; but when the deed was made the notary held it under the direction of the plaintiff, and was to send it to him. This was a delivery, because Chamberlain had no further control over it."

In the light of the foregoing authorities, it is evident in the case at bar that the grantors intended delivery when they mailed the deed. They intentionally surrendered all control over it and intentionally complied with the directions of the grantee in reference thereto. If for any reason they had failed to comply with his directions, and had selected some other agent for the grantee, and had delivered the deed to such agent without the knowledge of the grantee, it would be a good delivery under the foregoing authorities. We deem it clear that the surrender of the deed by the grantors when they deposited the same in the U. S. mail was a good delivery. The only dispute of fact in the record is whether the deed was deposited in the mail on January 5 or on January 6. Because of this dispute, we give consideration to another aspect of the subject.

II. The question naturally arises whether failure or delay in the delivery of the deed destroyed or suspended the precedent contractual rights of the grantee in the property. Let it be supposed that the deposit of the deed in the mails was made on January 6, rather than on January 5. Did such delay increase or decrease the relative rights of grantor and grantee to the property? Let us suppose that the deed had *not* been deposited in the mail, but had become lost. Would such a circum-

stance become fatal to the property rights of Estle? The precedent contract was complete. The grantor had already received the consideration in a practical sense. The grantee was already in possession. The oral contract was valid and was therefore enforceable. It was not within the statute of frauds. So we held in Kerr v. Yager, 158 Iowa 69. It was there held that a parol contract for the transfer of real estate in consideration of the extinguishment of existing indebtedness was an enforceable contract and was not within the statute of frauds. It had been so held in Hotchkiss v. Cox, 47 Iowa 655; and again in Dorr Cattle Co. v. Des Moines Bank, 127 Iowa 153. Under the precedent oral contract Estle could have maintained his possession as the equitable owner of the real estate as against the grantors. The recording statutes are in no manner involved. A judgment-creditor is not deemed a purchaser without notice. His lien attaches by operation of law to whatever interest in real estate his debtor owns. In the absence of fraud, his right to assert an interest in real estate is not greater than that of his debtor. If Alice Rex had any standing to contest the right of her father to this real estate, then her judgment-creditor could make the same contest. But if she had no right which she could assert, as against her father, then her judgment-creditor had none. If she had changed her mind before delivery of the deed and had withheld the same on that account, it would avail her nothing, for the simple reason that by her parol contract she had parted with the substance of all the right she had. Where there is a precedent binding contract between the parties, their obligations become fixed regardless of whether they perform them or not. If one fail to perform, he does not thereby destroy the right of the other to compel performance. The precedent contract confers an equitable ownership. Though one fail to obtain performance from the other party or fail to obtain a deed legally due, yet he is no less the *owner* of the land. True the absence of a record title casts a cloud upon his ownership. But it is a cloud which equity will remove at the cost of the other party to the contract. Let us suppose therefore that Alice Rex were plaintiff herein seeking to establish her ownership in the land in question. Could she prevail? Would it be available to her to say that the deed, though executed, was never delivered? Manifestly not. This illustrates how inconsequential the question of delivery may

be, as between a grantor and a grantee. Where are the cases to be found wherein a grantor for a valuable consideration repudiated a contract or based a cause of action on the ground of failure of delivery? If the grantor may gain nothing from such a defect in the title of the grantee, her judgment-creditor is under the same disability. His rights are limited by hers. His judgment-lien attaches by operation of law to her real estate. If she has no real estate he has no lien. And this is true even though she hold a naked legal title of the property. In such a case she is to be deemed a mere trustee, whose trusteeship is not subject to the call of her personal creditors.

Under this aspect of the case it would be quite immaterial whether the deed was delivered before January 6 or thereafter. The testimony of E .M. Rex was that he mailed the deed no later than January 5. He was corroborated by the testimony of Schmidt, the registry clerk of the Muscatine Post Office, to the effect that a registered letter arriving from Grinnell at the County Recorder's office in Muscatine by 9:00 A.M. on January 7 must ordinarily have been mailed at Grinnell on January 5. Another postal official testified that such letter would ordinarily have been mailed at Grinnell on January 6. The record discloses no reason why the direct testimony of Rex should be rejected. The burden was upon the plaintiff to prove the affirmative by preponderance of the evidence. He has not met the burden. The trial court held in effect that there was a good delivery at Grinnell. We reach the same conclusion. We are also of the opinion that the defendant was entitled to defend his ownership under his parol purchase even though the delivery of the deed had been delayed until January 7, or later.

The decree of the district court is accordingly affirmed.—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, DE GRAFF, MORLING, KINDIG, and GRIMM, JJ., concur.