John W. Blain, Appellant, v. Ida Maude Thompson Mackeravy Blain et al., Appellees.

No. 41608.

October 25, 1932.

A. D. Pugh, for appellant.

Maxwell & Ryan and M. J. Carey, for appellees.

KINDIG, J.—W. J. Blain died testate at San Diego, California, January 4, 1931. At the time of his death, he held the legal title to approximately ninety-six acres of land near Prairie City, in Jasper County, Iowa. John W. Blain, the plaintiff-appellant, is the brother of the decedent W. J. Blain. Ida Maude Thompson Mackeravy Blain, a defendant and appellee, claims to be the surviving wife of the decedent, W. J .Blain. Mrs. John Gill and her husband, John Gill, are the tenants on the foregoing land.

The decedent, during his lifetime, first was married to Rosetta Blain. In April, 1923, Rosetta commenced an action in the Polk County District Court to obtain a divorce from her husband, W. J. Blain. This relief was denied. Then, on December 28, 1923, W. J. Blain, in the same court, instituted an action for a divorce from his wife, Rosetta. To this petition, Rosetta Blain answered and filed a cross-petition asking for the second time that she be given a divorce from her husband, W. J. Blain. Upon the hearing of this controversy, the district court gave W. J. Blain a divorce from his wife, Rosetta Blain, but allowed her $5,000 alimony. An appeal was taken from that judgment and decree to this court by W. J. Blain.

On that appeal, W. J. Blain alleged that the alimony was excessive. After the submission in this court, we found that the alimony was excessive and reduced it to $1,200. Blain v. Blain, 200 Iowa 910.

According to the record, C. S. Cooter, an important witness in this case, was one of the attorneys for W. J. Blain in the foregoing divorce proceeding. During the thirty-day period in which Rosetta Blain was permitted, under the statute, to file petition for rehearing in the supreme court, a pretended deed is said to have been signed by W. J. Blain, on December 10, 1925, purporting to convey to the appellant the real estate in question. Following the death of W. J. Blain, the aforesaid deed was found among his papers in a safety deposit box in the *Capital City State Bank*, at Des Moines. Before going to California, W. J. Blain had lived in Des Moines. Subsequent to the execution of the deed above-mentioned, to wit, on February 12, 1929, it is claimed by the appellee Ida Maude Thompson Mackeravy Blain that she was legally married to W. J. Blain at Jacksonville, Florida. The deed, however, remained in the safety deposit box above mentioned until the death of W. J. Blain. Although, because of a telegram sent him by Ida Blain, the appellant obviously knew of his brother's death in California on January 4, 1931, and that the appellee was bringing the body to Iowa for burial, he nevertheless, shortly after receiving the telegram, first attempted to obtain the deed from the lock box at the bank himself, and when admittance to the box was denied him, he made an ex-parte application in the Polk County District Court to have C. S. Cooter, aforesaid, appointed administrator of the W. J. Blain estate. Cooter, as a matter of fact, was appointed administrator of the estate before the body of W. J. Blain was buried. Later, however, on the petition of the appellee Ida Blain, Cooter was removed as such administrator and the Valley National Bank appointed in his place.

So, on February 11, 1931, the present proceeding was instituted by the appellant against the appellees, Ida Maude Thompson Mackeravy Blain, John Gill, and Mrs. John Gill to establish the execution and delivery of the aforesaid deed, and therefore quiet title in the appellant as against the appellees in the land above-named. John Gill and his wife were only tenants on the land for the current year, and therefore have no further interests in this litigation. Consequently hereafter, when using the word appellee, reference will be made to Ida Maude Thompson Mackeravy Blain.

A defense was interposed by the appellee, but in addition thereto she also asked for affirmative relief in a cross-petition. Under these pleadings, the appellee, generally speaking, asked: First, that the title to the above-named real estate be quieted in her; and, second, that in lieu thereof her distributive share, as the surviving widow of W. J. Blain, be set off to her.

Upon the issues thus raised, a hearing was had in the district court. That tribunal refused to quiet title to the land in either appellant or appellee. Likewise, the trial court refused to set off for appellee her distributive share on the theory that another action was pending at that time in the Polk County district court involving the same controversy. It was said by the district court that it dismissed appellee's cross-petition "for want of jurisdiction," and the appellant appeals. No appeal was taken by the appellee.

■ I. At the trial, the appellant pleaded and maintained that the appellee was not the lawful wife of W. J. Blain, deceased. Therefore, he contends that she has no standing in the district court. Wherefore, he complains because the district court did not decide the issue concerning whether the appellee is the surviving widow of W. J. Blain. Obviously, however, appellee was made a defendant by appellant himself in the proceedings tried in the district court. Being a defendant, she, of course, had a right to appear, plead, and take part in the trial. Certainly the appellant cannot make the appellee a defendant in the proceedings and then complain because she appeared, filed pleadings, and took part in the trial. The district court found it unnecessary to pass on the issue as to whether there was a marriage between the appellee and W. J. Blain, because that question was then pending in the Polk County district court. Appellee, as before explained, does not appeal. Therefore, the issue is not before us, because the appellant can obtain a quiet title decree for the land in question only on the strength of his own title thereto, regardless of the weakness, if any, of appellee's claim to the land. McFerrin v. Wiltse, 210 Iowa 627 (local citation 631).

■ II. On the merits of appellant's appeal, it is claimed by him that he fully established his right to the land above-named through the aforesaid deed alleged to have been signed and acknowledged by W. J. Blain during his lifetime, and found in the decedent's deposit box after his death. This deed, the appellant contends, was produced by him at the trial. Hence, he asserts that the law presumes the execution and delivery of the instrument. Because

of that presumption, the appellant argues that the burden of proof at the trial is upon the appellee to show non-delivery of the deed by negativing such delivery "in every form or method by which an effective delivery could have been made by the grantor." See Heavner v. Kading, 209 Iowa 1275; Jones v. Betz, 203 Iowa 767; Richardson v. Estle, 214 Iowa 1007; Arndt v. Lapel, 214 Iowa 594; McKemey v. Ketchum, 188 Iowa 1081; Gould v. Logan, 198 Iowa 935; Davis v. Brown College, 208 Iowa 480.

Generally speaking, the appellee admits the rule of law set forth in the foregoing citations, but declares that it has no application in the case at bar. In his petition, the appellant urges that the deed is not in the possession of the appellant, but in the custody of the administrator. There is no pleading indicating that the deed was so in the custody of the appellant that it could be produced by him. But a fair construction of the appellant's petition is that the deed, when the trial commenced, was in the custody of the administrator. That being true, the administrator would be the only person who could lawfully produce the deed. When on the witness stand, C .S. Cooter, before named, testified that when he became administrator of the W. J. Blain estate he went to the Capital City State Bank, and, with an officer thereof, opened and inspected the safety deposit box belonging to the decedent. Therein the deed was found. Possession of the deed and the other contents of the box was taken by Cooter, the administrator. He says that later, without an order of court, the deed was delivered to the appellant.

Section 10764 of the 1931 Code provides:

"It [the district court] shall have jurisdiction in all matters in relation to the appointment of executors and trustees, and the *management and disposition of the property* of and settlement of such estates; * * *" (The italics are ours.)

Manifestly, under this statute the important act of delivering the deed in question is embraced within the "management and disposition" of decedent's estate. Therefore, an order of court would be essential before the administrator would be warranted in performing such an important function in the management and disposition of the estate. See In re Estate of Carpenter, 210 Iowa 553 (local citation 561.) Otherwise the district court would not have or control the management and disposition of the decedent's estate.

The deed to the land in question is important to the estate in-

volved. Apparently the real estate named in the deed constitutes a very large portion of the estate. While the decedent left no children, nevertheless it is contended by the appellee that she is his widow. As such, she would be entitled, under the statute, to a share in the estate. A controversy was imminent. Without doubt Cooter, the administrator, knew that both the appellant and appellee were claiming the deed. Under those circumstances, he had no right to decide the dispute, but should have submitted fully the proposition to the district court, in order that it might manage and make disposition of the property involved. It appears, then, that Cooter, the administrator, as said by appellant in his petition, retained the custody of the deed. If the administrator retained the custody thereof it cannot be said that the appellant produced it as contemplated by the law creating the presumption of delivery now under consideration. Such presumption is a rebuttable one. Heavner v. Kading (209 Iowa, 1275), supra, and other cases above cited.

According to the Heavner case, the fact that the deed is not delivered or recorded before the alleged maker's death is some evidence rebutting the presumption of delivery. Although it is said in the Heavner case that such evidence is not enough to overcome the presumption, nevertheless it tends to do so. In the case at bar, the appellant did not have actual possession of the deed before the alleged maker's death. Of course, therefore, the appellant did not record the instrument before the maker's death. These two facts, then, tend, as said in the Heavner case, to rebut the presumption, even though they do not overcome it. There is something in the case at bar, however, in addition to the lack of possession and recording before the maker's death. As before stated, the appellant pleads that the deed is now in the administrator's custody. Moreover, under the facts and circumstances here involved, it appears that the administrator never rightfully or legally permitted the deed to go from his custody into the actual possession of the appellant. The production said to have been made by the appellant under these circumstances can be no different than that which the administrator was empowered to permit him to make. If the deed is in the custody of the administrator, the appellant, in contemplation of the rule in question, could not produce it. A mere loan of the deed by the administrator to the appellant would not make the latter the legal producer thereof within the rule contemplated; for the sufficiency of the production could rise no higher than the right to pro-

duce. So, if the right to produce was illegally extended by the administrator, the production by the appellant likewise would be illegal.

It appears in McKemey v. Ketchum (188 Iowa, 1081), supra, that a deed made by a grantor before his death was delivered by the executor of the estate to the grantee named in the instrument. But in the McKemey case, so far as appears, there may have been an order of court authorizing the delivery. In all events, the question here discussed was not there raised.

Nevertheless, the claim is made by the appellant that Cooter, the administrator, although not obtaining an order of court authorizing the delivery of the deed in the first place, later did receive an order of court approving the same. There is introduced in evidence what is known in the record as Exhibit F, which is the report of the administrator Cooter, and an order approving the same. Within the report is a statement by Cooter that he, as administrator of the estate, delivered the aforesaid deed to the appellant, and that the Polk County district court approved the act. However, there is no date given in the report and order as to when the deed was thus delivered. This alleged report and order are dated July 28 and August 7, 1931, respectively. The petition in the case at bar was filed February 11, 1931. Appellee filed her answer and cross-petition on May 6 of that year. So, the present contest was pending and issues therein fully made up when the alleged report was filed and order thereon obtained. Following the order, the appellant in no way amended or supplemented his petition. He does not plead that the point involved was adjudicated in the Polk County district court, but rather he does plead, as before indicated, that the deed is now in the custody of the administrator. Moreover, if an adjudication is claimed, the record does not disclose that personal service of the foregoing report was made upon the appellee or that she was properly notified and had an opportunity to appear and defend in the Polk County hearing on the question of ratification. While the order recites that a notice was given, as previously ordered, it does not appear what the requirements were concerning the notice in the so-called former order; nor does it appear what notice was actually given. On the other hand, if the appellant is claiming a ratification, under the aforesaid ex-parte order, as the equivalent of an original authorization to deliver the deed, as contemplated by Code Section 10764, above quoted, his own petition

removes such issue. The appellant, as before said, pleaded that the deed is still in the possession of the administrator. By so reciting the appellant's contention, we do not decide whether he could obtain a ratification of the delivery in another court without personal notice after the issues in the suit had been fully made in the court below, raising the question that there was, in fact, no legal delivery. Therefore, under the pleadings and record in the case at bar, the issue of ratification is not involved. In the record, then, there is nothing to suggest that the administrator Cooter was authorized to deliver the deed to the appellant. On the contrary it affirmatively appears that such authorization was not granted by the district court.

Under the record presented, then, the appellee has overcome the presumption that the deed in question was duly executed and delivered to the appellant.

▪ III. Hence, it is necessary now to determine whether the appellant has shown himself entitled to have title to the real estate quieted in him under the deed. After carefully reviewing the record, we are constrained to find that he has not met this burden of proof.

Referring again to the appellant's petition, it will be found that he there affirmatively pleaded as follows:

"That just previous [to an alleged symbolical delivery of the deed] in November, 1925, a divorce had been finally granted to decedent from his then wife. * * * "

As shown by Blain v. Blain (200 Iowa 910), supra, and as before suggested, the time for the first wife of W. J. Blain to file a petition for rehearing in said cause had not elapsed when the deed was made. Cooter, the first administrator of the W. J. Blain estate, was one of the attorneys, as before explained, for W. J. Blain in the case of Blain v. Blain (200 Iowa, 910), supra. When testifying at the trial in the case at bar, Cooter said:

"W. J. Blain [the decedent] brought this deed [the one under consideration] into my office, and said he had made a deed to his brother, John W. Blain [appellant], and asked me to acknowledge it."

Complying with the alleged request of W. J. Blain, Cooter says he, as a notary public, took the alleged grantor's acknowledgment at that time and placed his notarial seal thereon, together with the statutory certificate. Then Cooter further testified:

"I asked him if he was going to deliver the deed to John W. Blain [appellant], and *I think he said he was,* and I suggested that he deliver it to me for John [appellant]." (The italics are ours.)

It is said by Cooter that thereupon W. J. Blain handed him the deed. Immediately thereafter Cooter says he returned the deed to W. J. Blain and "suggested that he take care of it." Thereafter Cooter never saw the deed until he was appointed administrator and found the instrument in the safety deposit box of W. J. Blain. The appellant pleaded that the foregoing transaction constituted a symbolical delivery of the deed from W. J. Blain to him. Such convey-ance, the appellant pleads in his petition, "was subject only to the decedent's use of said property during his lifetime." Because of the foregoing pleading and facts, it is argued by the appellant that there was a symbolical delivery of the deed to him, and that his brother W. J. Blain, before his death, in consummation of the symbolical delivery, authorized the custodian bank to permit appellant to take papers from the safety deposit box. Therefore, it is concluded by the appellant that the deed was delivered to him through the fore-going transaction.

On the other hand, the appellee seriously contends that there was no delivery under the circumstances. Where a deed is found in the grantor's box after his death, without anything more, there is no presumption of a delivery. Shetler v. Stewart & Weber, 133 Iowa 320 (local citation 324), and cases therein cited. Of course, when, as in cases like the following, the deed, signed and acknowledged by the grantor before his death, is found thereafter, naming the claimant as grantee, and there are other facts and circumstances indicating an intention on the grantor's part to deliver the deed to the grantee, such delivery, under proper limitations, will be upheld. Heavner v. Kading (209 Iowa, 1275), supra; McKemey v. Ketchum (188 Iowa, 1081), supra; Gould v. Logan (198 Iowa, 935), supra; Richardson v. Estle (214 Iowa, 1007), supra; Arndt v. Lapel (214 Iowa, 594), supra; Davis v. Brown College (208 Iowa, 480), supra.

In the case before us, however, it cannot be said that the appel-lant has shown the necessary corroborating circumstances to indicate that W. J. Blain, who signed and acknowledged the deed before his death and placed it in his safety deposit box, intended it to be de-livered thereafter to the appellant. There are circumstances per-suasively suggesting that the grantor signed and acknowledged the deed to protect his property against his divorced wife who was then

suing for alimony. However that may be, there is in the testimony of the witness Cooter, before set forth, no statement of any kind that W. J. Blain intended the deed to be delivered after his death. The deed in form was an absolute warranty without any reservations. Cooter, in his testimony, did not say that he, on behalf of appellant, had any right to obtain the deed after he returned it to the maker, W. J. Blain. Nothing was said by W. J. Blain, so far as this record discloses, to indicate that he had any intention that title should pass after his death, as distinguished from the present. If there were a symbolical delivery, it was a present as distinguished from a future delivery. This conclusion is consistent with the appellant's petition in this case.

When W. J. Blain signed and acknowledged the deed before Cooter, he did not, as before stated, authorize the latter to deliver the instrument after the former's death. Whatever delivery was accomplished by the alleged symbolical transaction amounted to a present delivery or nothing. Even the act of W. J. Blain in authorizing the appellant to take papers out of the safety deposit box contemplated that the same should be removed before the grantor's death. That authorization is in the following form:

"To the Capital City State Bank:     July 19, 1930.

"Please let my brother John W. Blain (appellant) look at my papers in lock box No. 670 and have them if he wants to take them away with him.

"Yours truly,
"W. J. Blain (decedent)."

An explanation of this transaction may be found in a letter written by the appellant to the defendant John Gill, a tenant on the land in question. The letter reads:

"May 3, 1930.

"Mr. John Gill:

"I was at Des Moines Monday. I went to get my brother Will's [decedent's] insurance policy. He left his papers in bank and they did not know me and would not let me have them until I heard from him [decedent] to get a permit. O, such red tape, you see how particular people is. He told me to get it [obviously the insurance policy] and if them insurance people don't pay to sue. I had to sue insurance company where Randolph lives before they would pay and they paid it with some costs. McFadden says Billie

has no insurance on shed and Billy says he has. *That is the reason I wanted to get policy.* I will get it [the policy] some of these days and see what we can do. Billy certainly knows what he is talking about. I knew he would not claim it if it was not coming to him. * * *     .     J. Blain [appellant]."

(Italics are ours.)

Manifestly the appellant desired an insurance policy which was in the safety deposit box of W. J. Blain. It is clear that appellant had made an attempt to obtain the policy, but the bank would not allow him to have that paper without an order from the owner, W. J. Blain. Beyond peradventure of doubt, the order addressed to the Capital City State Bank July 19, 1930, was obtained by appellant from W. J. Blain for the purposes announced in the former's letter above quoted to John Gill under date of May 3, 1930. The appellant knew nothing of the deed in question having been made for him, nor did appellant at that time know that the deed was to be delivered to him. Even any examination which the appellant may have made of the contents in the safety deposit box, by virtue of the authority granted by the aforesaid written order, did not reveal to him the fact that the deed was delivered to, or intended for, him.

Clearly, then, there is nothing in the aforesaid order of W. J. Blain that in any way supplements or supports the alleged symbolical delivery of the deed to Cooter in November, 1925. So, if there were a symbolical delivery, it must be found in the single transaction between W. J. Blain and the attorney Cooter in November, 1925. If, as Cooter says, he accepted delivery of the deed from W. J. Blain on behalf of the appellant, why was not the possession thereof retained? Furthermore, it is significant that although Cooter alleges he accepted the deed symbolically for the appellant, he never mentioned the transaction to appellant during the lifetime of W. J. Blain. Why the secrecy, especially when there was to be a present delivery, if any at all? What did Cooter mean when he redelivered the deed to W. J. Blain and said, "You take care of it?" Did he mean take care of the delivery or take care of the deed? Assuming there was to be a present delivery, why should W. J. Blain take care of the deed that belonged to the appellant?

W. J. Blain lived for several years after he signed and acknowledged that deed, yet at no time did he deliver the same to appellant. More than that, so far as the record discloses, W. J. Blain never informed the appellant that the deed had been executed. So

far as W. J. Blain was concerned, he apparently, according to the testimony of the witness Cooter, was willing without any secrecy to have the deed delivered to appellant. At that time W. J. Blain, according to Cooter's statements, made no mention of any reservation in the vesting of title or in the use of the property. There is nothing in the record to sustain a delivery of the deed reserving in the grantor a life estate, as claimed in appellant's petition.

When the deed was found after W. J. Blain's death, it was in no way marked or identified as the property of appellant. No person, as before suggested, was asked by W. J. Blain to deliver the deed to the appellant. Rather than there being a symbolical delivery in the transaction claimed by Cooter, there is in that unusual proceeding such incompleteness and lack of finality that no delivery resulted. Cooter was a lawyer at the time. He therefore could have prepared a writing, and, as a lawyer, he should have prepared one that would put at rest any controversy about the alleged delivery, if one had really taken place. Why, then, was the deed signed and acknowledged by W. J. Blain? At the time of the signing and acknowledging, W. J. Blain's first wife was seeking to obtain alimony from him. Did he not then sign and acknowledge the deed because he desired to arm himself with an instrument that could lie dormant and undelivered until the occasion to use it arose, if it ever did? According to the record, a rehearing in Rosetta's divorce suit was not granted, and therefore the reduced alimony stood as a final judgment. This reduced judgment was finally paid by W. J. Blain. Therefore, is it not true that the occasion to deliver the deed above named never arose? Much in the record indicates that this was the reason for the deed. Furthermore, the circumstances surrounding this inference, at least, have a slight corroboration in the recitals of appellant's petition.

The appellee offered to show that following the signing and acknowledgment of the deed W. J. Blain continued to manage the property and claimed it as his own up to the time of his death. An objection was made by the appellant to that offer on the theory that a grantor may not, after he has signed, acknowledged, and delivered a deed, make the same ineffectual by his subsequent acts and declarations. Jones v. Betz (203 Iowa, 767), supra; Mathers v. Sewell, 193 Iowa 35; Shepherd v. Delaney, 191 Iowa 138, and other cases. Likewise the appellee sought to show, by the declarations of W. J. Blain, that he signed and acknowledged the deed for

the purpose of protecting his property against his former wife, Rosetta. Again the appellant objected as before. It is true that a grantor cannot defeat a deed, duly executed by him, by his subsequent acts and declarations. Whether the evidence is admissible in this case because the appellant has not proven a delivery, we do not now decide, and therefore give no consideration to that evidence.

As before indicated, W. J. Blain died on January 4, 1931, and thereafter, before his burial, appellant was attempting to obtain the deed in the safety deposit box even before an administrator had been appointed. In fact, an administrator was appointed before the burial of W. J. Blain, and the deed taken from the box. Why was there so much hurry? There is a strong indication, at least, because of the appellant's urgent and immediate effort to obtain admittance to the safety deposit box, that he, immediately after the death of W. J. Blain, learned from Cooter about the deed. Did it occur to the appellant that the dormant and undelivered deed, prepared for use in protecting, if necessary, the property of W. J. Blain in connection with the divorce case of his first wife, as an afterthought might be employed in the present situation to defeat the property rights of the appellee through an unfounded claim of delivery? These questions are strongly suggested by the facts in the record, and the appellant has not sufficiently answered them.

We have not here attempted to set out all the facts and circumstances bearing upon this case. This decision is without prejudice: First, to the legal claim, if any, which the appellant may have to the property in question as the heir at law of W. J. Blain; and second, to the claim of the appellee to the property in question, or any part thereof, as the surviving wife of the aforesaid W. J. Blain, if she is such.

Under the entire record, however, it is apparent that the appellant has not proven the delivery of the deed to him, and the judgment and decree of the district court must be, and hereby is, affirmed. —Affirmed.

STEVENS, C. J., and EVANS, FAVILLE, ALBERT, WAGNER, and BLISS. JJ., concur.